# Exhibit A

MARCH 18, 10

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY
(618) 692-6240
WWW.CO.MADISON.IL.US


PHILLIPS CHARLOTTE IND/ON BEHALF OF ALL OTHERS SIMILARLY SIT
                    PLAINTIFF

     VS.

                                         DATE: 3/18/2010


                                         CASE No. 2010 L  000303

RIGHTCHOICE MANAGED CARE INC

    C T Corporation System
    120 South Central Avenue
    Clayton, MO 63105

                    DEFENDANT


DEFENDANT RIGHTCHOICE MANAGED CARE INC:

     You are hereby summoned and required to file an answer in this case, or otherwise file your appearance, in the office of the Madison County Circuit Clerk, within 30 days after service of this summons, exclusive of the day of service.  If you fail to do so, a judgment or decree by default may be taken against you for the relief prayed in the complaint.

     This summons must be returned by the officer or other person to whom it was given for service, with endorsement thereon of service and fees, if any, immediately after service.  If service cannot be made, this summons shall be returned so endorsed.

     This summons may not be served later than 30 days after its date.

     Witness:  MATT MELUCCI the Clerk of said Circuit Court and the seal thereof, at Edwardsville, Illinois, this MARCH 18, 10.



                         MATT MELUCCI
                         CLERK OF THE CIRCUIT COURT

                                    A Bentlage

                         BY:_____
                                    Deputy Clerk


=================================================================================

     (Plaintiff's attorney or plaintiff if he is not represented by an attorney)

MARK C. GOLDENBERG
GOLDENBERG HELLER ANTOGNOLI & ROWLA
2227 S STATE RT 157
EDWARDSVILLE    IL 62025


Date of Service:_____, 20_____.
(To be inserted by officer on the copy left with the defendant or other person)

EXHIBIT
A

MARCH 18, 10

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY
(618) 692-6240
WWW.CO.MADISON.IL.US

PHILLIPS CHARLOTTE IND/ON BEHALF OF ALL OTHERS SIMILARLY SIT
           PLAINTIFF                      DATE: 3/18/2010

   VS.

                                CASE No. 2010 L  000303

RIGHTCHOICE MANAGED CARE INC

            DEFENDANT

DEFENDANT RIGHTCHOICE MANAGED CARE INC:

    You are hereby summoned and required to file an answer in this case, or otherwise file your appearance, in the office of the Madison County Circuit Clerk, within 30 days after service of this summons, exclusive of the day of service.  If you fail to do so, a judgment or decree by default may be taken against you for the relief prayed in the complaint.

    This summons must be returned by the officer or other person to whom it was given for service, with endorsement thereon of service and fees, if any, immediately after service.  If service cannot be made, this summons shall be returned so endorsed.

    This summons may not be served later than 30 days after its date.

    Witness:  MATT MELUCCI the Clerk of said Circuit Court and the seal thereof, at Edwardsville, Illinois, this MARCH 18, 10.



                       MATT MELUCCI
                       CLERK OF THE CIRCUIT COURT

                       BY:_____
                             Deputy Clerk

===============================================================================

(Plaintiff's attorney or plaintiff if he is not represented by an attorney)

MARK C. GOLDENBERG
GOLDENBERG HELLER ANTOGNOLI & ROWLA
2227 S STATE RT 157
EDWARDSVILLE     IL 62025

    Date of Service:_____, 20_____.
    (To be inserted by officer on the copy left with the defendant or other person)

CASE No. 2010 L  000303

STATE OF ILLINOIS }
MADISON COUNTY    } ss.

I, _____, Sheriff of said county, have duly served the within summons on the
defendant _____ by leaving a copy thereof with said defendant personally, on the
_____ day of _____, 20____.

I have duly served the said summons on the defendant, _____
on the _____ day of _____, 20_____, by leaving a copy of
said summons on said date at his/her usual place of abode with _____
_____, a person of the family of said _____ of the age
of 13 years or upwards and by informing such persons with whom said summons was left of the contents thereof
and by also sending a copy of said summons on the _____ day of _____, 20_____, in a sealed
envelope, with postage fully prepaid, addressed to said defendant
_____, at his/her usual place of abode, as stated hereinabove in my
return.

Dated this _____ day of _____, 20_____.

_____
Sheriff

Sheriff's Fees

Service...............$_____

Making Copies.........$_____

_____ Miles Traveled..$_____

PHILLIPS CHARLOTTE IND/ON BEHALF OF ALL OTHERS SIMILARLY SIT
                    PLAINTIFF      Cost of mailing copies.$_____

VS.                                Return...............$_____

                                   Total................$_____

RIGHTCHOICE MANAGED CARE INC

DEFENDANT

2 of 2

MARCH 18, 10

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY
(618) 692-6240
WWW.CO.MADISON.IL.US


PHILLIPS CHARLOTTE IND/ON BEHALF OF ALL OTHERS SIMILARLY SIT
PLAINTIFF

VS.

DATE: 3/18/2010


CASE No. 2010 L  000303

RIGHTCHOICE INSURANCE COMPANY ("RIGHTCHOICE")

C T Corporation System
120 Couth Central Avenue
Clayton, MO 63105

DEFENDANT

DEFENDANT RIGHTCHOICE INSURANCE COMPANY ("RIGHTCHOICE"):

     You are hereby summoned and required to file an answer in this case, or otherwise file your appearance, in the office of the Madison County Circuit Clerk, within 30 days after service of this summons, exclusive of the day of service.  If you fail to do so, a judgment or decree by default may be taken against you for the relief prayed in the complaint.

     This summons must be returned by the officer or other person to whom it was given for service, with endorsement thereon of service and fees, if any, immediately after service.  If service cannot be made, this summons shall be returned so endorsed.

     This summons may not be served later than 30 days after its date.

     Witness: MATT MELUCCI the Clerk of said Circuit Court and the seal thereof, at Edwardsville, Illinois, this MARCH 18, 10.



MATT MELUCCI
CLERK OF THE CIRCUIT COURT

BY: _____A Bentlage_____
              Deputy Clerk

============================================================================

(Plaintiff's attorney or plaintiff if he is not represented by an attorney)

MARK C. GOLDENBERG
GOLDENBERG HELLER ANTOGNOLI & ROWLA
2227 S STATE RT 157
EDWARDSVILLE    IL 62025


Date of Service:_____, 20_____.
(To be inserted by officer on the copy left with the defendant or other person)

MARCH 18, 10

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY
(618) 692-6240
WWW.CO.MADISON.IL.US

PHILLIPS CHARLOTTE IND/ON BEHALF OF ALL OTHERS SIMILARLY SIT
            PLAINTIFF                              DATE: 3/18/2010

    VS.
                                            CASE No. 2010 L  000303

RIGHTCHOICE INSURANCE COMPANY ("RIGHTCHOICE")




            DEFENDANT

DEFENDANT RIGHTCHOICE INSURANCE COMPANY ("RIGHTCHOICE"):

    You are hereby summoned and required to file an answer in this case, or otherwise file your appearance, in the office of the Madison County Circuit Clerk, within 30 days after service of this summons, exclusive of the day of service.  If you fail to do so, a judgment or decree by default may be taken against you for the relief prayed in the complaint.

    This summons must be returned by the officer or other person to whom it was given for service, with endorsement thereon of service and fees, if any, immediately after service.  If service cannot be made, this summons shall be returned so endorsed.

    This summons may not be served later than 30 days after its date.

    Witness: MATT MELUCCI the Clerk of said Circuit Court and the seal thereof, at Edwardsville, Illinois, this MARCH 18, 10.



                        MATT MELUCCI
                        CLERK OF THE CIRCUIT COURT


                        BY: _____
                                Deputy Clerk

================================================================================
(Plaintiff's attorney or plaintiff if he is not represented by an attorney)

MARK C. GOLDENBERG
GOLDENBERG HELLER ANTOGNOLI & ROWLA
2227 S STATE RT 157
EDWARDSVILLE    IL 62025


    Date of Service:_____, 20_____.
    (To be inserted by officer on the copy left with the defendant or other person)



                            1 of 2

CASE No. 2010 L  000303

STATE OF ILLINOIS }
MADISON COUNTY    } ss.

     I, _____, Sheriff of said county, have duly served the within summons on the defendant _____ by leaving a copy thereof with said defendant personally, on the _____ day of _____, 20____.

=============================================================================================

I have duly served the said summons on the defendant, _____

on the _____ day of _____, 20_____, by leaving a copy of

said summons on said date at his/her usual place of abode with _____

_____, a person of the family of said _____ of the age

of 13 years or upwards and by informing such persons with whom said summons was left of the contents thereof

and by also sending a copy of said summons on the _____ day of _____, 20_____, in a sealed

envelope, with postage fully prepaid, addressed to said defendant

_____, at his/her usual place of abode, as stated hereinabove in my

return.


     Dated this _____ day of _____, 20_____.


                                   _____

Sheriff

=============================================================================================

                                  Sheriff's Fees

                          Service................$_____

                          Making Copies..........$_____

                          _____ Miles Traveled..$_____

PHILLIPS CHARLOTTE IND/ON BEHALF OF ALL OTHERS SIMILARLY SIT

                PLAINTIFF        Cost of mailing copies.$_____

    VS.                          Return................$_____

                          =====================================

                          Total.................$_____

RIGHTCHOICE INSURANCE COMPANY ("RIGHTCHOICE")


                DEFENDANT


                          2 of 2

MARCH 18, 10

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY
(618) 692-6240
WWW.CO.MADISON.IL.US

PHILLIPS CHARLOTTE IND/ON BEHALF OF ALL OTHERS SIMILARLY SIT
                    PLAINTIFF
    VS.
                                                    DATE: 3/18/2010

                                        CASE No. 2010 L  000303

UNICARE ILLINOIS SERVICES INC
    C T Corporation System
    208 South LaSalle Street
    Suite 814
    Chicago, IL 60604
                    DEFENDANT

DEFENDANT UNICARE ILLINOIS SERVICES INC:

    You are hereby summoned and required to file an answer in this case, or otherwise file your appearance, in the office of the Madison County Circuit Clerk, within 30 days after service of this summons, exclusive of the day of service.  If you fail to do so, a judgment or decree by default may be taken against you for the relief prayed in the complaint.

    This summons must be returned by the officer or other person to whom it was given for service, with endorsement thereon of service and fees, if any, immediately after service.  If service cannot be made, this summons shall be returned so endorsed.

    This summons may not be served later than 30 days after its date.

    Witness:  MATT MELUCCI the Clerk of said Circuit Court and the seal thereof, at Edwardsville, Illinois, this MARCH 18, 10.



                        MATT MELUCCI
                        CLERK OF THE CIRCUIT COURT

                        BY: _A Bentlage_
                            Deputy Clerk

===========================================================================
(Plaintiff's attorney or plaintiff if he is not represented by an attorney)

MARK C. GOLDENBERG
GOLDENBERG HELLER ANTOGNOLI & ROWLA
2227 S STATE RT 157
EDWARDSVILLE    IL 62025

Date of Service:_____, 20_____.
(To be inserted by officer on the copy left with the defendant or other person)

MARCH 18, 10

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY
(618) 692-6240
WWW.CO.MADISON.IL.US

PHILLIPS CHARLOTTE IND/ON BEHALF OF ALL OTHERS SIMILARLY SIT

                     PLAINTIFF                              DATE: 3/18/2010

   VS.

                                                     CASE No. 2010 L  000303

UNICARE ILLINOIS SERVICES INC

                    DEFENDANT

DEFENDANT UNICARE ILLINOIS SERVICES INC:

    You are hereby summoned and required to file an answer in this case, or otherwise file your appearance, in the office of the Madison County Circuit Clerk, within 30 days after service of this summons, exclusive of the day of service.  If you fail to do so, a judgment or decree by default may be taken against you for the relief prayed in the complaint.

    This summons must be returned by the officer or other person to whom it was given for service, with endorsement thereon of service and fees, if any, immediately after service.  If service cannot be made, this summons shall be returned so endorsed.

    This summons may not be served later than 30 days after its date.

    Witness:  MATT MELUCCI the Clerk of said Circuit Court and the seal thereof, at Edwardsville, Illinois, this MARCH 18, 10.



                              MATT MELUCCI
                              CLERK OF THE CIRCUIT COURT

                              BY:_____
                                    Deputy Clerk

==============================================================================

(Plaintiff's attorney or plaintiff if he is not represented by an attorney)

MARK C. GOLDENBERG
GOLDENBERG HELLER ANTOGNOLI & ROWLA
2227 S STATE RT 157
EDWARDSVILLE    IL 62025

    Date of Service:_____, 20_____.
    (To be inserted by officer on the copy left with the defendant or other person)

                                  1 of 2

CASE No. 2010 L  000303

STATE OF ILLINOIS }
MADISON COUNTY    }  ss.

      I, _____, Sheriff of said county, have duly served the within summons on the
defendant _____ by leaving a copy thereof with said defendant personally, on the
_____ day of _____, 20____.
===========================================================================================================

I have duly served the said summons on the defendant, _____
on the _____ day of _____, 20_____, by leaving a copy of
said summons on said date at his/her usual place of abode with _____
_____, a person of the family of said _____ of the age
of 13 years or upwards and by informing such persons with whom said summons was left of the contents thereof
and by also sending a copy of said summons on the _____ day of _____, 20_____, in a sealed
envelope, with postage fully prepaid, addressed to said defendant
_____, at his/her usual place of abode, as stated hereinabove in my
return.


      Dated this _____ day of _____, 20_____.


_____
Sheriff
===========================================================================================================

                                              Sheriff's Fees

                                  Service................$_____

                                  Making Copies.........$_____

                          _____ Miles Traveled..$_____

PHILLIPS CHARLOTTE IND/ON BEHALF OF ALL OTHERS SIMILARLY SIT
                PLAINTIFF        Cost of mailing copies.$_____

      VS.                        Return................$_____
                                =====================================
                                Total.................$_____

UNICARE ILLINOIS SERVICES INC



                DEFENDANT

MARCH 18, 10

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY
(618) 692-6240
WWW.CO.MADISON.IL.US


PHILLIPS CHARLOTTE IND/ON BEHALF OF ALL OTHERS SIMILARLY SIT
                    PLAINTIFF
    VS.

                                        DATE: 3/18/2010


                                        CASE No. 2010 L  000303

UNICARE HEALTH INSURANCE COMPANY OF THE MIDWEST
        C T Corporation System
        208 South LaSalle Street
        Suite 814
        Chicago, IL  60604   _____
                    DEFENDANT

DEFENDANT UNICARE HEALTH INSURANCE COMPANY OF THE MIDWEST:

    You are hereby summoned and required to file an answer in this case, or otherwise file your appearance, in the office of the Madison County Circuit Clerk, within 30 days after service of this summons, exclusive of the day of service.  If you fail to do so, a judgment or decree by default may be taken against you for the relief prayed in the complaint.

    This summons must be returned by the officer or other person to whom it was given for service, with endorsement thereon of service and fees, if any, immediately after service.  If service cannot be made, this summons shall be returned so endorsed.

    This summons may not be served later than 30 days after its date.

    Witness:  MATT MELUCCI the Clerk of said Circuit Court and the seal thereof, at Edwardsville, Illinois, this MARCH 18, 10. .



                        MATT MELUCCI
                        CLERK OF THE CIRCUIT COURT

                        BY: _____
                               Deputy Clerk

==================================================================================
(Plaintiff's attorney or plaintiff if he is not represented by an attorney)

MARK C. GOLDENBERG
GOLDENBERG HELLER ANTOGNOLI ·& ROWLA
2227 S STATE RT 157
EDWARDSVILLE    IL 62025


Date of Service:_____, 20_____.
    (To be inserted by officer on the copy left with the defendant or other person)

MARCH 18, 10

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY
(618) 692-6240
WWW.CO.MADISON.IL.US


PHILLIPS CHARLOTTE IND/ON BEHALF OF ALL OTHERS SIMILARLY SIT
                  PLAINTIFF                              DATE: 3/18/2010
    VS.

                                               CASE No. 2010 L `000303

UNICARE HEALTH INSURANCE COMPANY OF THE MIDWEST



                         DEFENDANT

DEFENDANT UNICARE HEALTH INSURANCE COMPANY OF THE MIDWEST:

    You are hereby summoned and required to file an answer in this case, or otherwise file your appearance, in the office of the Madison County Circuit Clerk, within 30 days after service of this summons, exclusive of the day of service.  If you fail to do so, a judgment or decree by default may be taken against you for the relief prayed in the complaint.

    This summons must be returned by the officer or other person to whom it was given for service, with endorsement thereon of service and fees, if any, immediately after service.  If service cannot be made, this summons shall be returned so endorsed.

    This summons may not be served later than 30 days after its date.

    Witness:  MATT MELUCCI the Clerk of said Circuit Court and the seal thereof, at Edwardsville, Illinois, this MARCH 18, 10.




                             MATT MELUCCI
                               CLERK OF THE CIRCUIT COURT

                             BY:_____
                                  Deputy Clerk

========================================================================
(Plaintiff's attorney or plaintiff if he is not represented by an attorney)

MARK C. GOLDENBERG
GOLDENBERG HELLER ANTOGNOLI & ROWLA
2227 S STATE RT 157
EDWARDSVILLE   IL 62025


    Date of Service:_____, 20_____.
    (To be inserted by officer on the copy left with the defendant or other person)


                             1 of 2

CASE No. 2010 L  000303

STATE OF ILLINOIS }
MADISON COUNTY    } ss.

      I, _____, Sheriff of said county, have duly served the within summons on the
defendant _____ by leaving a copy thereof with said defendant personally, on the
_____ day of _____, 20____.

=======================================================================================================

I have duly served the said summons on the defendant, _____
on the _____ day of _____, 20_____, by leaving a copy of
said summons on said date at his/her usual place of abode with _____
_____, a person of the family of said _____ of the age
of 13 years or upwards and by informing such persons with whom said summons was left of the contents thereof
and by also sending a copy of said summons on the _____ day of _____, 20_____, in a sealed
envelope, with postage fully prepaid, addressed to said defendant
_____, at his/her usual place of abode, as stated hereinabove in my
return.


      Dated this _____ day of _____, 20_____.


            _____

Sheriff
=======================================================================================================

                              Sheriff's Fees

                        Service...............$_____

                        Making Copies.........$_____

                        _____ Miles Traveled..$_____
PHILLIPS CHARLOTTE IND/ON BEHALF OF ALL OTHERS SIMILARLY SIT
                PLAINTIFF     Cost of mailing copies.$_____

      VS.                     Return................$_____
                        ==================================
                        Total.................$_____
UNICARE HEALTH INSURANCE COMPANY OF THE MIDWEST


            DEFENDANT




                              2 of 2

MARCH 18, 10

STATE OF ILLINOIS

IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT

MADISON COUNTY

(618) 692-6240

WWW.CO.MADISON.IL.US

PHILLIPS CHARLOTTE IND/ON BEHALF OF ALL OTHERS SIMILARLY SIT

             PLAINTIFF

  VS.

                                    DATE: 3/18/2010

                                    CASE No. 2010 L  000303

UNICARE NATIONAL SERVICES INC
  The Corporation Trust Company
  Corporation Trust Center
  1209 Orange Street
  Wilmington, DE  19801
           DEFENDANT

DEFENDANT UNICARE NATIONAL SERVICES INC:

    You are hereby summoned and required to file an answer in this case, or otherwise file your appearance, in the office of the Madison County Circuit Clerk, within 30 days after service of this summons, exclusive of the day of service.  If you fail to do so, a judgment or decree by default may be taken against you for the relief prayed in the complaint.

    This summons must be returned by the officer or other person to whom it was given for service, with endorsement thereon of service and fees, if any, immediately after service.  If service cannot be made, this summons shall be returned so endorsed.

    This summons may not be served later than 30 days after its date.

    Witness:  MATT MELUCCI the Clerk of said Circuit Court and the seal thereof, at Edwardsville, Illinois, this _____10.



                MATT MELUCCI
                CLERK OF THE CIRCUIT COURT

                           _A Bentlage_

            BY: _____
                          Deputy Clerk

================================================================================

(Plaintiff's attorney or plaintiff if he is not represented by an attorney)

MARK C. GOLDENBERG
GOLDENBERG HELLER ANTOGNOLI & ROWLA
2227 S STATE RT 157
EDWARDSVILLE    IL 62025

Date of Service: _____, 20_____.
(To be inserted by officer on the copy left with the defendant or other person)

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY
(618) 692-6240
WWW.CO.MADISON.IL.US

PHILLIPS CHARLOTTE IND/ON BEHALF OF ALL OTHERS SIMILARLY SIT
                    PLAINTIFF                                DATE: 3/18/2010

    VS.
                                                    CASE No. 2010 L  000303

UNICARE NATIONAL SERVICES INC


                    DEFENDANT

DEFENDANT UNICARE NATIONAL SERVICES INC:

    You are hereby summoned and required to file an answer in this case, or otherwise file your appearance, in the office of the Madison County Circuit Clerk, within 30 days after service of this summons, exclusive of the day of service.  If you fail to do so, a judgment or decree by default may be taken against you for the relief prayed in the complaint.

    This summons must be returned by the officer or other person to whom it was given for service, with endorsement thereon of service and fees, if any, immediately after service.  If service cannot be made, this summons shall be returned so endorsed.

    This summons may not be served later than 30 days after its date.

    Witness:  MATT MELUCCI the Clerk of said Circuit Court and the seal thereof, at Edwardsville, Illinois, this MARCH 18, 10.



                    MATT MELUCCI
                    CLERK OF THE CIRCUIT COURT

                    BY: _____
                              Deputy Clerk

===============================================================================
    (Plaintiff's attorney or plaintiff if he is not represented by an attorney)

MARK C. GOLDENBERG
GOLDENBERG HELLER ANTOGNOLI & ROWLA
2227 S STATE RT 157
EDWARDSVILLE    IL 62025


    Date of Service: _____, 20_____.
    (To be inserted by officer on the copy left with the defendant or other person)


                            1 of 2

CASE No. 2010 L  000303

STATE OF ILLINOIS }
MADISON COUNTY    } ·ss.

   I, _____, Sheriff of said county, have duly served the within summons on the defendant _____ by leaving a copy thereof with said defendant personally, on the _____ day of _____, 20_____.

=====================================================================================

I have duly served the said summons on the defendant, _____
on the _____ day of _____, 20_____, by leaving a copy of
said summons on said date at his/her usual place of abode with _____
_____, a person of the family of said _____ of the age
of 13 years or upwards and by informing such persons with whom said summons was left of the contents thereof
and by also sending a copy of said summons on the _____ day of _____, 20_____, in a sealed
envelope, with postage fully prepaid, addressed to said defendant
_____, at his/her usual place of abode, as stated hereinabove in my
return.

   Dated this _____ day of _____, 20_____.


_____

Sheriff
=====================================================================================

Sheriff's Fees

Service................$_____

Making Copies..........$_____

_____ Miles Traveled..$_____

PHILLIPS CHARLOTTE IND/ON BEHALF OF ALL OTHERS SIMILARLY SIT
         PLAINTIFF     Cost of mailing copies.$_____

   VS.            Return................$_____
            =======================================
            Total.................$_____

UNICARE NATIONAL SERVICES INC


     DEFENDANT


2 of 2

MARCH 18, 10

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY
(618) 692-6240
WWW.CO.MADISON.IL.US


PHILLIPS CHARLOTTE IND/ON BEHALF OF ALL OTHERS SIMILARLY SIT
                    PLAINTIFF

    VS.

                                                    DATE: 3/18/2010


                                                    CASE No. 2010 L  000303

    WELLPOINT INC (WELLPOINT)
        C T Corporation System
        251 E Ohio Street, Suite 1100
        Indianpolis, IN 46204


                    DEFENDANT

DEFENDANT WELLPOINT INC (WELLPOINT):

    You are hereby summoned and required to file an answer in this case, or otherwise file your appearance,
in the office of the Madison County Circuit Clerk, within 30 days after service of this summons, exclusive of
the day of service.  If you fail to do so, a judgment or decree by default may be taken against you for the
relief prayed in the complaint.

    This summons must be returned by the officer or other person to whom it was given for service, with
endorsement thereon of service and fees, if any, immediately after service.  If service cannot be made, this
summons shall be returned so endorsed.


    This summons may not be served later than 30 days after its date.

    Witness:  MATT MELUCCI the Clerk of said Circuit Court and the seal thereof, at Edwardsville, Illinois,
this MARCH 18, 10.


                            MATT MELUCCI
                            CLERK OF THE CIRCUIT COURT




                    BY:_____
                            Deputy Clerk

===============================================================================
(Plaintiff's attorney or plaintiff if he is not represented by an attorney)

MARK C. GOLDENBERG
GOLDENBERG HELLER ANTOGNOLI & ROWLA
2227 S STATE RT 157
EDWARDSVILLE    IL 62025


Date of Service:_____, 20_____.
(To be inserted by officer on the copy left with the defendant or other person)

MARCH 18, 10

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY
(618) 692-6240
WWW.CO.MADISON.IL.US


PHILLIPS CHARLOTTE IND/ON BEHALF OF ALL OTHERS SIMILARLY SIT
                        PLAINTIFF                          DATE: 3/18/2010

      VS.
                                                CASE No. 2010 L  000303

WELLPOINT INC (WELLPOINT)



                   DEFENDANT

DEFENDANT WELLPOINT INC (WELLPOINT):

      You are hereby summoned and required to file an answer in this case, or otherwise file your appearance,
in the office of the Madison County Circuit Clerk, within 30 days after service of this summons, exclusive of
the day of service.  If you fail to do so, a judgment or decree by default may be taken against you for the
relief prayed in the complaint.

      This summons must be returned by the officer or other person to whom it was given for service, with
endorsement thereon of service and fees, if any, immediately after service.  If service cannot be made, this
summons shall be returned so endorsed.

      This summons may not be served later than 30 days after its date.

      Witness:  MATT MELUCCI the Clerk of said Circuit Court and the seal thereof, at Edwardsville, Illinois,
this MARCH 18, 10.



                              MATT MELUCCI
                              CLERK OF THE CIRCUIT COURT

                              BY:_____
                                        Deputy Clerk

================================================================================
(Plaintiff's attorney or plaintiff if he is not represented by an attorney)


MARK C. GOLDENBERG
GOLDENBERG HELLER ANTOGNOLI & ROWLA
2227 S STATE RT 157
EDWARDSVILLE    IL 62025


   Date of Service:_____, 20_____.
   (To be inserted by officer on the copy left with the defendant or other person)



                              1 of 2

CASE No. 2010 L  000303

STATE OF ILLINOIS }
MADISON COUNTY    } ss.

     I, _____, Sheriff of said county, have duly served the within summons on the
defendant _____ by leaving a copy thereof with said defendant personally, on the
_____ day of _____, 20____.
====================================================================================

I have duly served the said summons on the defendant, _____
on the _____ day of _____, 20_____, by leaving a copy of
said summons on said date at his/her usual place of abode with _____
_____, a person of the family of said _____ of the age
of 13 years or upwards and by informing such persons with whom said summons was left of the contents thereof
and by also sending a copy of said summons on the _____ day of _____, 20_____, in a sealed
envelope, with postage fully prepaid, addressed to said defendant
_____, at his/her usual place of abode, as stated hereinabove in my
return.


    Dated this _____ day of _____, 20_____.



Sheriff                        _____
   =================================================================================

Sheriff's Fees

Service................$_____

Making Copies.........$_____

_____ Miles Traveled..$_____

PHILLIPS CHARLOTTE IND/ON BEHALF OF ALL OTHERS SIMILARLY SIT
              PLAINTIFF        Cost of mailing copies.$_____

   VS.                            Return................$_____
                        =======================================
                    Total................$_____

WELLPOINT INC (WELLPOINT)



      DEFENDANT

In the Circuit Court of the Third Judicial Circuit, Madison County, Illinois

Charlotte Phillips and Bob Myrick )
individually and on behalf of all )
others similarly situated )
)
   Plaintiffs, )  Case. Number: 10 L 303
)
   v. )  Jury Trial Demanded
)
WellPoint Inc. (WellPoint), )
Unicare National Services, Inc., )
Unicare Illinois Services, Inc., )
Unicare Health Insurance Company of the Midwest. )
("Unicare"), RightCHOICE Managed Care, Inc. )
and RightCHOICE Insurance Company )
("RightCHOICE") )
)
   Defendants. )

## NOTICE

To: Margo Weinstein, Esq.
  Sonnenschein Nath & Rosenthal
  7800 Sears Tower
  Chicago, IL  60606-6404

  Justine N. Margolis
  Sonnenschein Nath & Rosenthal
  One Metropolitan Square
  Suite 3000
  St. Louis, MO 63102-2741

## Notice and Acknowledgment of Receipt of Summons and Complaint

The enclosed summons and complaint are served pursuant to section 2-213 of the Code of Civil Procedure.

You must complete the acknowledgment part of this form and return one copy of the completed form to the sender within 30 days.

You must sign and date the acknowledgment. If you are served on behalf of a corporation, unincorporated association (including a partnership), or other entity, you must indicate under

your signature your relationship to that entity. If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority.

If you do not complete and return the form to the sender within 30 days, you (or the party on whose behalf you are being served) may be served a summons and complaint in any other manner permitted by law.

If you do complete and return this form, you (or the party on whose behalf you are being served) must answer the complaint within 60 days. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

I declare, under penalty of perjury, that this notice and acknowledgment of receipt of summons and complaint will have been mailed on April 23, 2010.

Signature _Ken Toldt_____

Date of Signature ___April 23, 2010_____

ACKNOWLEDGMENT OF RECEIPT OF SUMMONS AND COMPLAINT

I declare, under penalty of perjury, that I received a copy of the summons and of the complaint in the above-captioned matter at:

Margo Weinstein, Esq.
Sonnenschein Nath & Rosenthal
7800 Sears Tower.
Chicago, Il.  60606-6404

Justine N. Margolis
Sonnenschein Nath & Rosenthal
One Metropolitan Square
Suite 3000
St. Louis, MO 63102-2741

PRINT or TYPE Name   Justine N. Margolis

Relationship to Entity/Authority to Receive Service of Process   Counsel

Signature   _____

Date of Signature   4/23/10

**IN THE CIRCUIT COURT**
**THIRD JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**



MAR 1 7 2010

CLERK OF CIRCUIT COURT #6
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

| | |
|---|---|
| Charlotte Phillips and Bob Myrick, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>WellPoint Inc. (WellPoint),<br>Unicare National Services, Inc.,<br>Unicare Illinois Services, Inc.,<br>Unicare Health Insurance Company of the Midwest,<br>("Unicare"), RightCHOICE Managed Care, Inc.<br>and RightCHOICE Insurance Company<br>("RightCHOICE")<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 

Case. Number: 10 L 303

Jury Trial Demanded

## CLASS ACTION COMPLAINT

### I.    INTRODUCTION - THE NATURE OF THE COMPLAINT

1.    Plaintiffs for themselves and the class of other Illinois persons who were covered by RightCHOICE insurance polices complain of WellPoint's manipulation of its acquisition of RightCHOICE by which WellPoint captured RightCHOICE's highly profitable 2.8 million member Missouri Blue Cross business and sheared off the smaller and less profitable Illinois RightCHOICE policyholders, forcing them to reapply for lesser policies at higher premiums or forcing them onto unsustainable policies or forcing them to lose their coverage altogether.

2.    This Illinois class action seeks to remedy the lucrative but unlawful practice employed by Defendants to maximize WellPoint's profits after acquiring RightCHOICE where WellPoint unlawfully shed renewable insureds and forced the insureds off their health insurance,

to reapply for new coverage or be automatically converted and forced onto vastly more costly policies that most eventually could not maintain, eventually losing their coverage entirely.

3.     Plaintiffs are former health insurance policy holders of RightCHOICE health insurance with renewable policies.

4.     Defendants obtained regulatory approval for its acquisition by assuring regulators that it had no plan to materially change RightCHOICE's Illinois operations; WellPoint acquired RightCHOICE, capturing its Missouri Blue Cross business, then shut down RightCHOICE's Illinois operations, and forced RightCHOICE insureds to either reapply as strangers for coverage by WellPoint's Unicare subsidiary, or be automatically converted to a lesser benefits Unicare policy with at least a 250% premium increase, or forgo coverage entirely.

5.     The insureds suffered serious damages as a result of these choices (either there were new exclusions for their medical conditions or increases in their health insurance premiums of at least 250%, or worse, the insureds were left without any health insurance at all and/or left to get coverage through public safety nets).

6.     Plaintiffs themselves, and all other class members, were Illinois residents covered by RightCHOICE health insurance policies prior to WellPoint's acquisition of RightCHOICE, and complain that WellPoint's executed its acquisition to capture RightCHOICE's lucrative Missouri Blue Cross Blue Shield Business and maximize its profit by illegally evading obligations to renew their health coverage without respect to their health status at that time, and illegally forced, deceptively induced, or automatically converted them to either new coverage with inferior terms, increased premiums, new exclusions, or to forego coverage entirely in violation of the policyholders' rights under contract, Illinois Insurance law, and consumer fraud protections.

## II.     JURISDICTION AND VENUE

7.      **Jurisdiction.**  This court has jurisdiction over this litigation (a) under Illinois Code of Civil Procedure, 735 ILCS 5/2-209(a)(4) (for contracting to insure any person, property or risk located within this State at the time of contracting); and (b) under the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/10a(a).

8.      **Venue.**  Venue is proper in this county under Illinois Code of Civil Procedure, 735 ILCS 5/2-103(e) because the Defendants are an insurance company incorporated under the laws of Illinois.

9.      **Tolling of Limitations During Other Class Litigation.**  On March 21, 2003, *different* Plaintiffs filed a similar putative Class Action Complaint regarding the transaction complained of here, in Jefferson County, Illinois, sub nom. *Cima et al. v. WellPoint et al.* Case Number 2003 L 20.  After the state court upheld the cause of action, and requiring more specificity, a first Amended Complaint was filed on June, 3, 2005.  These same Defendants removed the case on or about June 28, 2005, to the United States District Court, S.D. Illinois, Benton, (05 CV 4127).  The statute of limitations was tolled until at least, March 18, 2008, when U.S. District Judge Gilbert denied Class Certification.  In this Class Action Complaint, the Class is limited to an Illinois-only class, asserting claims for only Illinois RightCHOICE insureds.

## III.    THE PLAINTIFFS

10.     Plaintiff Charlotte Phillips is a resident of Hartford, Illinois and Plaintiff Bob Myrick, is a resident of Waterloo, Illinois.

11.     Each of the Plaintiffs, and each class member, was an Illinois resident and RightCHOICE policyholder at the time of WellPoint's acquisition of RightCHOICE and forced conversion of its policyholders.

## IV.    THE DEFENDANTS

12.    As relevant here, the WellPoint affiliated corporations include essentially three Defendant groups, all controlled by WellPoint, the common ultimate parent, RightCHOICE (the acquired corporate group), and Unicare (WellPoint's existing operating brand name corporations in Illinois).

13.    The WellPoint corporate group was the product of WellPoint Health Network Inc. formed from the for- profit conversion of Blue Cross of California.  Over the period of 1996 to 2002 it grew into one of the largest health insurance companies in the United States by a strategy of acquiring regional healthcare companies throughout the nation.

14.    WellPoint Inc. was formed by the 2004 merger of WellPoint Health Network Inc. and Anthem Inc.

15.    At the time of the acquisition/conversion, WellPoint Health Network Inc. was a corporation duly organized and existing under and by virtue of the laws of Delaware, with its corporate headquarters in California, offices in Illinois, and transacting the business of insurance in the State of Illinois and in various Illinois counties in Central and Southern Illinois.

16.    WellPoint is the dominant enterprise in this case, publicly describing itself as having "one company, one culture":

> The WellPoint family of companies employs nearly 20,000 full-time associates across the country.
>
> \*   \*   \*
>
> *WellPoint has created a strong national company that is committed to the value of one company, one culture.  Broad policy and strategic decisions are made at the corporate level.*

(Emphasis added)

17.     Since 1996 WellPoint operated in Illinois under the "Unicare" brand as WellPoint's "brand name" for its non-Blue-Cross labeled operations outside of California.

18.     Thus, Wellpoint operated in Illinois as Unicare Life & Health Insurance Company.

19.     One WellPoint subsidiary, Unicare National Services, Inc., a Delaware corporation, is the parent corporation of Unicare Illinois Services, Inc., an Illinois corporation.

20.     Unicare Illinois Services, Inc. is the parent of Unicare Health Insurance Company of the Midwest, itself an Illinois corporation.

21.     Unicare Health Insurance Company of the Midwest is an indirect subsidiary of WellPoint.

22.     Prior to its acquisition by WellPoint, RightChoice Managed Care, Inc. was an independent company that operated in two markets.

23.     RightCHOICE Managed Care operated in Missouri as Blue Cross Blue Shield of Missouri ("BCBSMO") but conducted business in Illinois through its RightCHOICE Insurance Company (an Illinois corporation) as a "non-Blue" under the "RightCHOICE" name, because a different, unaffiliated company, Health Care Service Corporation ("HCSC"), held the "Blue Cross" license for Illinois.

## V.     THE FACTS OF THE CASE

### A.     WellPoint Background.

24.     In 1996, the not-for-profit "Blue Cross" of California reincorporated as for-profit and publically owned WellPoint Health Networks, Inc., and embarked on a strategy of national growth by acquisition by acquiring both "Blues" and "non-Blues," eventually acquiring at least eight major health insurance groups over the period of approximately 1996 coming up to 2002.

**B.**    **RightCHOICE's Operations In Illinois and Missouri.**

25.    As of 2001, RightCHOICE operated in two primary markets:  servicing 2.8 million members as the Missouri "Blue" licensee, and a much smaller "non-blue" Illinois business, perhaps 300,000 members, operated under the RightCHOICE label.

**C.**    **WellPoint's Acquisition of RightCHOICE.**

26.    In August 2001, attracted to RightCHOICE's Missouri business, WellPoint set it sights on acquiring the RightCHOICE company.

27.    WellPoint and RightCHOICE executives had a series of meetings regarding the merger from August 22, 2001 to October 17, 2001.

28.    Eventually, WellPoint reached an agreement to acquire RightCHOICE, in a merger transaction "thereby acquiring direct or indirect control of RightCHOICE [Managed Care], RIC [Right Choice Insurance Company – the Illinois operation] and the other subsidiaries of RightCHOICE.

29.    The acquisition, valuing RightCHOICE at approximately $1.3 billion, was effected by issuing .6161 WellPoint shares for each outstanding RightCHOICE share, or $66 a share in cash value.

30.    WellPoint's acquisition of RightCHOICE required the approval of the Insurance Commissioner of each state in which the acquired RightCHOICE did business.

**D.**    **Obtaining Regulatory Approval For the Acquisition.**

31.    Seeking Illinois regulatory approval for the merger, WellPoint and RightCHOICE filed the required "Form A" containing specific representations to the Illinois Division of Insurance to induce it to approve WellPoint's acquisition of RightCHOICE.

32.     In that respect, WellPoint's "Form A" filing with the Illinois Department of Insurance required disclosure of how RightCHOICE would be operated in the future for the protection of Illinois policyholders.

33.     WellPoint knew that if it disclosed its plan to capture the Missouri business and re-price or get rid of the Illinois policyholders, Illinois would not approve the merger.

34.     Accordingly, it made the following affirmative statement in its Form A:

> WellPoint has no present plans to cause RightCHOICE, RIC or any Acquired Subsidiary ... to merge or consolidate them with any person or persons, other than the Merger. There also are presently no plans to make any other material change in RightCHOICE's, RIC or any other Acquired Subsidiary's business operation or corporate structure, other than as may be provided herein or as may arise in the ordinary course of business, and other than to achieve the synergies that normally arise in substantial acquisitions.

Form A, at p. 10-11.

35.     This Form A statement was almost certainly a lie when it was made.

36.     Nonetheless, the Illinois Department of Insurance approved Wellpoint's acquisition of RightCHOICE by merger.

37.     Following the Department's approval, the merger was effected, closing on January 31, 2002.

**E.      The Forced Conversion of RightCHOICE Insureds to Unicare.**

38.     Almost as soon as the acquisition was completed, WellPoint directed that RightCHOICE's Illinois business be converted to Unicare and the less profitable policyholders (those who were ill or otherwise of lesser profitability) be either forced into higher cost, lesser coverage policies, or forced out altogether.

39.     Accordingly, no later than March 22, 2002, and in spite of its previous assurances to the Illinois Division of Insurance, less than three months following the completion of the merger, WellPoint, "the ultimate owner" of Unicare and RightCHOICE, made the decision and began executing its plan to re-underwrite, re-rate, re-price, and force the conversion of RightCHOICE insureds in Illinois to Unicare.  Then, by March, 2002, the tax implication for "transferring this business" was "evaluated."  Also in March, 2002, the "Project to convert RC IL business to Unicare" is developed.  And, then in March and April, 2002 WellPoint's Ms. Waldie directs Mr. Gastineau to develop "RightCHOICE/UNICARE Transition Strategies Options."

40.     No later than March, 2002, Unicare's Mr. Mark Gastineau received direction from WellPoint/Unicare's Ms. Kandi Waldi, to convert RightCHOICE's Illinois business to Unicare.

41.     To effect this "conversion" WellPoint purportedly had RightCHOICE execute a "market withdrawal" from Illinois and its policy holders transferred to Unicare, forcing Plaintiffs and the class to choose among three actions:

    1)  reapply with Unicare/WellPoint for a new policy, subject to underwriting (i.e. subject to repricing or rejection);

    2)  be automatically converted to a Unicare/WellPoint policy with lesser coverage but an approximately 250% increase in premium payments; or

    3)  forego coverage with WellPoint/Unicare and find new coverage or go without health insurance at all.

42.     The conversion was effected by exploiting a perceived statutory loophole in which it characterized the transactions as unrelated, and in that way sought to withdraw RightCHOICE and market Unicare and retain the profitable RightCHOICE insureds and re-price

or get rid of the risks, in other words, to re-rate, re-price or shed less profitable undesirable insureds.

**F.      How This Violated RightCHOICE Policyholders Insurance and the Health Insurance Portability and Accountability Act ("HIPAA").**

43.     The attraction of health insurance is that a person can generally rely upon his right to renew his policy each year at rates which do not change based on the person's inevitably deteriorating health condition.

44.     People who apply are generally "underwritten" only in their initial year, a process by which the health insurance company either accepts, declines, or conditions coverage of pre-existing conditions, and prices the person's health insurance premiums based on the person's unique health situation.

45.     Renewals thereafter may not be reunderwritten or repriced except for age increases and other yearly and uniform reasons.

46.     Illinois HIPAA statute, among other things, precludes health insurance companies from refusing to renew coverage for policyholders based on their health status.

47.     Plaintiffs' RightCHOICE health insurance policies were typical form policies that required the policyholder to pay a premium at the inception of the policy, and make periodic premium payments to retain continued insurance coverage.  The Plaintiffs' policies were also "guaranteed" renewable from year to year at the election of the insured.  Ex. 1, Ms. Phillips' RightCHOICE policy at p. 30 ("RightCHOICE policy").  In return for the health insurance premium payments, the insurance company provided health insurance and paid claims pursuant to the terms of the insurance policy.

48.     Indeed, the cover of the policy also emphasizes the "Renewability" of the policy. Ex. 1.

49.     Health insurance with a renewability provision recognizes that it is more difficult to insure people over time because of the inevitability of deteriorating health. This renewability feature is very valuable, and its loss is extremely significant.

50.     Pursuant to the RightCHOICE insurance policy, Defendants owed duties to their policyholders. As an insurance company operating in Illinois, it must conform its conduct to the minimum standards of the Illinois Insurance Code, and other statutory enactments.

51.     Plaintiffs' policies expressly stated the policy "shall be governed by the laws of that State [Illinois]" and that "[a]ny Certificate provision that, on the Enrollment Date, is in conflict with the laws of the state where the Subscriber then lives is automatically amended to conform to the minimum requirements of those laws." Ex. 1, RightCHOICE policy at p. 48.

52.     Under the terms of Plaintiffs' policies, the termination of the health insurance policy would be effectively changed only if there was "31 days' prior written notice" of a "discontinuation of the Coverage or Coverage Type under which the Member is enrolled." Ex. 1, RightCHOICE policy at p. 30 & 49.

53.     RightCHOICE policies contained certain "Guaranteed Renewal" provisions permitting RightCHOICE to nonrenew or discontinue health insurance Coverage of an individual only under certain limited circumstances:

>       Termination of Coverage. RightCHOICE is ceasing to offer Coverage in the individual market in accordance with State law.
>
>       If RightCHOICE decides to discontinue offering a particular type of health insurance coverage in the individual market, coverage may be discontinued only if RightCHOICE provides notice to each Subscriber at least 90 days prior to the discontinuation and then provides each Member the option to purchase any other individual product currently being marketed.
>
>       If RightCHOICE decides to discontinue offering all health insurance coverage in the individual market, coverage may be discontinued only if RightCHOICE

provides notice to each Subscriber at least 180 days prior to the date of expiration of their Coverage.

Ex. 3, RightCHOICE policy at 30 & 66.

54.     These contract provisions essentially tract the renewability protections of Illinois insurance law's HIPAA provisions.

55.     In general, and in Illinois particularly, there are two situations in which a company may decline to renew an individual or group policy: either by a "product withdrawal" or a "market withdrawal."

56.     Under 215 ILCS 97/50, health insurance companies are required, except under specific circumstances, to renew or continue in force individual coverage at the option of the individual.[1]   A separate provision, 215 ILCS 97/30 protects group health insureds.

---

[1]   § 215 ILCS 97/50. Guaranteed renewability of individual health insurance coverage.

Sec. 50. Guaranteed renewability of individual health insurance coverage.

(A) In general. Except as provided in this Section, a health insurance issuer that provides individual health insurance coverage to an individual shall renew or continue in force such coverage at the option of the individual.

(C) Requirements for uniform termination of coverage.

(1) Particular type of coverage not offered.  In any case in which an issuer decides to discontinue offering a particular type of health insurance coverage offered in the individual market, coverage of such type may be discontinued by the issuer only if:

  (a) the issuer provides notice to each covered individual provided coverage of this type in such market of such discontinuation at least 90 days prior to the date of the discontinuation of such coverage;
(b) the issuer offers, to each individual in the individual market provided coverage of this type, the option to purchase any other individual health insurance coverage currently being offered by the issuer for individuals in such market; and
(c) in exercising the option to discontinue coverage of that type and in offering the option of coverage under subparagraph (b), the issuer acts uniformly without regard to any health status-related factor of enrolled individuals or individuals who may become eligible for such coverage.

(2) Discontinuance of all coverage.

  (a) In general. Subject to subparagraph (c), in any case in which a health insurance issuer elects to discontinue offering all health insurance coverage in the individual market in Illinois, health insurance coverage may be discontinued by the issuer only if:
(i) the issuer provides notice to the Director and to each individual of the discontinuation at least 180 days prior to

Case No.                                                                                              Page 11 of 36

57.     Under a "product withdrawal" (97/50 ( C ) (1)), a company dropping a type of coverage must give 90-days notice and offer affected policyholders the right to convert to any other health coverage on a uniform basis without regard to the person's health.

58.     Under a "market withdrawal" (97/50 ( C ) (2)), a health insurer may choose not to renew if it is discontinuing to offer all health insurance in Illinois.  While no regulatory approval is necessary, the company must give 180-days notice and the company is barred from issuing *any* health insurance in the state for five years afterward.  97/50 (C)(2)(b) Prohibition on Market reentry.

59.     For these purposes, WellPoint is a "health insurance issuer" or should be so regarded in interpreting HIPAA to effect its purpose.

60.     Thus, Illinois HIPAA protection required either that Defendants here (a) offer all affected policyholders the option to purchase any other individual health insurance coverage it currently offered in Illinois and to do so by acting "uniformly without regard to any health status-related factor of enrolled individuals" or to (b) be prohibited from reentering the market during the 5-year period beginning on the date of the discontinuation of the last health insurance coverage not so renewed.

61.     Defendants' ploy here was to have RightCHOICE effect an Illinois market withdrawal without offering its insureds the option to purchase other policies sold by its Unicare affiliate except by reunderwriting, repricing, or being rejected or forced on to a policy with lesser benefits at greatly increased cost.

---

the date of the expiration of such coverage; and
(ii) all health insurance issued or delivered for issuance in Illinois in such market is discontinued and coverage under such health insurance coverage in such market is not renewed.
(b) Prohibition on market reentry. In the case of a discontinuation under subparagraph (a) in the individual market, the issuer may not provide for the issuance of any health insurance coverage in Illinois involved during the 5-year period beginning on the date of the discontinuation of the last health insurance coverage not so renewed.

62.     Defendants used the Plaintiffs' health status as a factor for issuing and pricing the new WellPoint/Unicare policies which Defendants marketed in Illinois, ignoring the 5-year prohibition.

**G.      WellPoint's Forced Conversion of RightCHOICE Insureds to Unicare.**

63.     Accordingly, no later than March 22, 2002, and in spite of its previous assurances to the Illinois Division of Insurance, less than three months following the completion of the merger, WellPoint, directed Unicare and RightCHOICE to execute its plan to re-underwrite, re-rate, re-price, and force the conversion of RightCHOICE insureds in Illinois to Unicare.

64.     In March, 2002, Unicare's Mr. Mark Gastineau received direction from WellPoint/Unicare's Ms. Kandi Waldi to convert RightCHOICE's business to Unicare.  Mr. Gastineau was named the "WellPoint Project Charter" to work on securing the Illinois Regulators' approval, along with Mr. Naftzger.  Ex. 2.

65.     Internally the scheme was called the "WellPoint Project Charter" and the project was called "RightChoice Market Withdrawal and Conversion to UNICARE" with its declared goal:

> "Deliverable: Complete Market Withdrawal of RightChoice Insurance Co. and convert all members (Large Group, Small Group and Individual) to UNICARE."

The plan declared that the "Measure of Success" would be if "90% of groups and individuals go through the Underwriting process..." Ex. 2.

66.     This "charter" was overseen, directed and executed by WellPoint, and for its benefit.  This was solely a profit driven transaction, that is, to increase the profitability of the business to WellPoint by forcing the policy holders to be re-underwritten (meaning, the insureds' coverage, exclusions and premiums were reset as if they were new applicants with pre-existing conditions to be excluded, or premiums reset based on their current medical condition, despite

the fact that these very risks were already taken into consideration in pricing the original

RightCHOICE polices).

**H.    WellPoint Finesses the Regulators, then Misrepresents that the Conversion Scheme had been Approved by the Illinois Department of Insurance, When There is No Approval Process.**

67.    Although no regulatory approval was required under the HIPAA statute, finessing

the regulators *was an important* part of the plan.

68.    Mr. Gastineau and Mr. Naftzger contacted the Illinois Department of Insurance to

advise the Department of what it intended to do and to review letters to be sent to RightCHOICE

insureds.

69.    Then on May 31, 2002, Mr. Naftzger (Unicare/Wellpoint) wrote a letter to Illinois

Department of Insurance (IDOI) informing them of Unicare's decision to execute the conversion

plan and provided a copy of the letter to be sent to policyholders.  Ex. 3.

70.    This letter was intentionally submitted to a different section than Form A because

WellPoint wanted to conceal its duplicity and because Illinois HIPAA's market withdrawals are

not subject to the Insurance Department's review at all, and no approval is required or given by

the Illinois Department of Insurance for this type of transaction, whether in general or for

WellPoint's transaction in particular.  No approval by the Illinois Department of Insurance can

be given to this type of transaction as contemplated by WellPoint.

71.    Nevertheless, it was also part of the plan to induce policyholders to go along with

the offered choices by misrepresenting the conversion as having been approved by the Division.

72.    Indeed, Defendants published a September 2002 newsletter to insurance brokers

entitled "Producer News" that misrepresented the transaction as having been approved by the

Illinois Department of Insurance:

As you know, RightCHOICE Insurance Company
became a subsidiary of WellPoint Health Networks
Inc. When our parent company merged with
WellPoint earlier this year.  You are probably aware
that UNICARE Health Insurance Company of the
Midwest is another operating subsidiary of
WellPoint and that UNICARE offers a much
broader portfolio of benefits plans...

After carefully evaluating the RightCHOICE and
Unicare services and plans for groups and
individuals in southern Illinois, we believe that we
can best serve our current and future members
through Unicare.  **For this reason, we have
obtained approval from the Illinois Department
of Insurance to withdraw RightCHOICE plans
from the market, effective Jan. 1. ...**

We also provided information about the UNICARE
plans they [RightCHOICE insureds] can apply for
now....
We encourage you to encourage your clients to
apply for UNICARE coverage....

Ex. 4. (Emphasis added).  Plaintiff Phillips received this document.  Ex. 4.

**I.     The Execution of the Plan to Convert RightCHOICE Insureds to Unicare.**

73.     Notice was sent to RightCHOICE insureds (Ex. 5) stating their RightCHOICE

policies were being discontinued and that insureds could *reapply* for insurance with

WellPoint/Unicare.  RightCHOICE's notice stated that RightCHOICE was "withdrawing from

the market" and that the withdrawal was "as a result of our merger", and then proceeded to

market Unicare polices as part of the WellPoint "family" of products.  The Unicare notice (Ex. 5)

related to the merger, similarly notified insureds that RightCHOICE was "withdrawing from the

market" and proceeded to "offer" and market Unicare polices as part of the WellPoint "family."

74.     WellPoint's RightCHOICE and WellPoint's Unicare units sent coordinated and

nearly identical marketing letters to RightCHOICE insureds informing them that *because of, or*

Case No.                                                              Page 15 of 36

*as a result of the merger*, RightCHOICE was closing and that their options were to either submit

an application for coverage with Unicare subject to reunderwriting or be automatically converted

at a 250% increased premium.  RightCHOICE's letter to insureds provides:

> "We are writing to notify you that as a result of our merger with
> the WellPoint Health Networks Inc. (WellPoint) family of
> companies, RightCHOICE Insurance Company (RightCHOICE) is
> withdrawing from the market as of midnight, December 31,
> 2002....
>
> Although your current benefit plan will no longer be available, we
> are pleased to tell you that a variety of PPO health benefits plans
> are available to our RightCHOICE members through UNICARE
> Health Insurance Company of the Midwest (UNICARE).
> UNICARE is another member of the WellPoint family of
> companies.  Information about these programs is enclosed."

Ex. 5.

75.    Notice that if no action is taken, insureds will be "automatically enrolled in a

designated UNICARE plan with coverage effective January 1, 2003.  The designated plan will be

provided without medical underwriting requirements and will be rated on that basis."  Ex. 5.

76.    Unicare's letter to RightCHOICE insureds:

> As you have been notified by RightCHOICE
> Insurance Company ("RightCHOICE"), the merger
> of RightCHOICE's parent company, RightCHOICE
> Managed Care, Inc., with the WellPoint Health
> Networks, Inc. family of companies means that
> RightCHOICE is withdrawing from the market.
> Your current health insurance will not be available
> after December 31, 2002.
>
> As another member of the WellPoint Health
> Networks Inc. family of companies, UNICARE
> Health Insurance Company of the Midwest
> ("UNICARE") is proud to offer you an innovative
> spectrum of health coverage plans, and we would be
> pleased to have you as a member of the UNICARE
> family.

We encourage you to take advantage of this opportunity to move to a UNICARE plan now. By applying early, you can select the UNICARE plan of your choice, subject to underwriting. Also enclosed is an application to complete once you have selected a plan.

If you continue to be insured by RightCHOICE up until November 29, 2002, UNICARE will automatically assign you to a UNICARE plan with an effective date of January 1, 2003. Specific details of this plan will be mailed to you at a later date.

Ex. 5.

77.     These two letters, both from the WellPoint subsidiaries, show that WellPoint had

no intention of effecting a legitimate market withdrawal, which would have required WellPoint

and Unicare to terminate its Illinois business for five years. Instead it shows that there was a

plan to exploit the merger as a "basis" for effecting the conversion plan, that "as a result of our

merger" RightCHOICE was withdrawing, so that "another member of the WellPoint Health

Networks Inc. family of companies, Unicare" could "offer" coverage.

**J.      The New Policies Promised Lesser Benefits at Sometimes Vastly Higher Cost.**

78.     The Unicare policies for which RightCHOICE insureds could apply contained

exclusions of coverage that did not exist in the previous coverage with RightCHOICE, demanded

higher premium rates, with decreased benefits. Unicare issued a "Unicare/RightCHOICE

Benefit Comparison" work sheet as a marketing tool to convert RightCHOICE insureds into

Unicare insureds. Ex. 6, Unicare/RightCHOICE Benefit Comparison and Unicare

RightCHOICE Individual Subscriber Q & A.

79.    Unicare also issued a "RightCHOICE individual Subscriber Q&A" that illustrates WellPoint's coordinated marketing practices to convert RightCHOICE insureds after the RightCHOICE policies were discontinued.  For example the Q &A states:

Q#1.   What happens if I do not apply for a UNICARE plan?

A.  Unless you apply for a UNICARE plan by November 29, 2002 and are subsequently accepted you will be automatically enrolled in UNICARE 1000 Deductible Plan...

Q#2.   What will happen if my application for a UNICARE plan is denied?

A.  If your application for the UNICARE plan of your choice is declined and you continue to pay your RightCHOICE premium for the remainder of the year, UNICARE will automatically enroll you in the UNICARE 1000 Deductible Plan, effective January 1, 2003.

*          *          *

Q#5.   What will my premiums be for the UNICARE 1000 Deductible plan?

A.  If you are automatically enrolled in the Individual UNICARE 100 deductible plan your rates will be approximately **250%** higher than the January 1, 2003 preferred rate.  However, if you apply for any of the UNICARE plan before November 29, 2002 and are accepted, you will be rated based on underwriting and current rates today.

Ex. 6, Unicare/RightCHOICE Individual Subscriber Q & A.

80.    As a part of its plan, WellPoint produced sample questions and recommended answers for RightCHOICE telephone representatives to explain the import of the market withdrawal to insureds who called:

"Why are you doing this?

A.  After our parent company merged with WellPoint Health Networks Inc. and RightCHOICE became a WellPoint subsidiary, a decision was made to withdraw all RightCHOICE plans from the market and offer all RightCHOICE business the opportunity to transfer to UNICARE Health Insurance Company of the Midwest, another WellPoint subsidiary..."

Ex. 7.

81.     WellPoint had no motive other than maximizing profit and reducing expenses by repricing or eliminating unprofitable insureds when it decided to cut off RightCHOICE insureds and rewrite the RightCHOICE business.

82.     For example, the "RightChoice/UNICARE Transition Strategies Options" memorandum frankly describes WellPoint's options and each options' "pros" and "cons." Option 1 would have been to convert RightChoice members to Unicare paper – the "pros" included "increased retention as all members will be automatically converted" and "Less abrasion to individuals who may not otherwise pass underwriting..." but the "cons" were stark, "Do not obtain the benefits of re-underwriting groups and individuals." Ex. 8.

83.     Options 2 and 3, imposed by WellPoint upon the RightCHOICE insureds, called for RightCHOICE product and market withdrawal, information provided to RightCHOICE members about Unicare to request a policy, re-underwriting of individuals, and the "conversion to a single plan design with a substantial rate increase." Ex. 8. For options 2 and 3, WellPoint considered the "pros" and "cons" again, finding the "pros" to be "Obtain [the] financial benefits of re-underwriting groups and individuals," while the "cons" were "decreased retention as all members must reapply for coverage" and "more abrasion to individuals who may not otherwise pass underwriting...". Ex. 8.

84.     WellPoint made a decision that the "pros" and "cons" of options 2 and 3 were superior to the "pros" and "cons" of option 1, and WellPoint and Unicare executed the scheme to obtain the benefits of re-underwriting the RightCHOICE business.

85.     The WellPoint program actively marketed Unicare insurance to RightCHOICE insureds contemporaneously with the withdrawal of RightCHOICE from Illinois, and WellPoint

marketed Unicare insurance services to RightCHOICE insureds as a result of the withdrawal of RightCHOICE.

### K.  The Plaintiffs and Their Situation.

86.  Plaintiff Charlotte Phillips is a resident of Hartford, Illinois (Madison, County) and Plaintiff Bob Myrick is a resident of Waterloo, Illinois. (Monroe, County).

87.  The named Plaintiffs had RightCHOICE health insurance policies in force at the time of the conversion from RightCHOICE to WellPoint/Unicare health insurance policies. At those relevant times Plaintiffs were residents of Illinois.

88.  Plaintiffs were insured under a health insurance policy issued by RightCHOICE insurance. Defendants, as Plaintiffs' insurer, are in control of a copy of the policies at issue. Further, Plaintiffs have attached hereto a copy of Plaintiff Phillips' policy. Exhibit xx.

#### 1.  Charlotte Phillips

89.  Mrs. Phillips had RightCHOICE Individual PPO with maternity coverage, from on or about February, 2001.

90.  She became pregnant in June, 2002, and having fulfilled the waiting period of the RightCHOICE maternity coverage was covered for maternity benefits for delivery of her baby due in 2003.

91.  In June/July 2002, she received the form letter sent to RightCHOICE's insureds dated June, 2002 that notified her that as a result of the merger with WellPoint's family of companies, RightCHOICE was withdrawing from the market as of midnight December 31, 2002. Ex. 5.

92.  Mrs. Phillips then received the form letter sent by Unicare, dated June, 2002, which sought to retain RightCHOICE insureds. Ex. 5.

93.     RightCHOICE and Unicare required that Mrs. Phillips be automatically enrolled in the Unicare 1000 plan with a 250% increase, and then after delivery, she would be forced to re-apply, through underwriting, for a Unicare plan. Ex. 9.  Mrs. Phillips paid additional premium amounts from the inception of her policy with RightCHOICE to have maternity coverage but for which she was then unable to use.

94.     Mrs. Phillips terminated her coverage with RightCHOICE on 1/01/03 by letter confirmation 1/09/03.

95.     Mrs. Phillips was last billed by RightCHOICE on or about 12/5/02, for $240 for coverage of 1 month.  Her rate was at that amount since on or about 7/5/02.  Her previous rate was from 6/5/02, for about $217 or $214.  On 6/5/01 her rate was $153 and began on 2/5/01.

96.     In December, 2002, Mrs. Phillips applied for Kids Care via Illinois Department of Public Aid, and coverage began on or about January, 2003.

### 2.     Bob Myrick

97.     Plaintiff Bob Myrick was a RightCHOICE insured with an individual policy at the time of the conversion and notice to Unicare.  He applied and enrolled in an individual RighCHOICE policy for himself and his family, making his first RightCHOICE payment of $306 on or about 3/02/01.  His family RightCHOICE premium was $430 a month.

98.     While with RightCHOICE, Plaintiff Myrick developed and was diagnosed with Type 1 diabetes.

99.     As an insured at the time of conversion, Plaintiff Myrick received the RightCHOICE and Unicare conversion notices and letters.

100.   Because he was diagnosed with diabetes while covered by RightCHOICE, his application would have been declined with Unicare, and his only option was to convert his policy to Unicare at a premium rate at least 250% higher than the standard rate.

101.   He could not afford to pay the premium for Unicare 1000 at a 250% increase under the conversion option and was forced to let his coverage lapse.

102.   Plaintiff Myrick made his last payment of $430 to RightCHOICE on or about 10/21/02.

103.   Thereafter, Plaintiff Myrick applied for I-CHIP and his new premium with I-CHIP was $320 each month for himself.  Plaintiff Myrick's wife and children applied and were covered by Blue Cross Blues Shield and their premium with Blue Cross/ Blue Shield was $636 for a two month increment of time or $318 each month.  He made his first payment on or about 12/20/02.

104.   Plaintiff Myrick paid a difference in the first year after he left RightChoice of about $2500.  Because of rising rates, he since has raised his deductibles in order to keep his new coverage alive.

## VI.   CLASS ACTION ALLEGATIONS

105.   The decisions and actions made by Defendants (i.e. discontinuing all RightCHOICE polices, marketing of WellPoint/Unicare policies, and automatic conversions of those who were either rejected or did not apply and use of health status as a factor in consideration for the new Unicare/WellPoint policies) were the same decisions and actions for all policyholders, including the named Plaintiffs.

106.   In executing the conversion plan to rewrite policies, WellPoint and Unicare (a) expressed a central uniform goal for Unicare to attempt to retain as much of the business as

Case No.

possible, (b) identically breached the policy's Guaranteed Renewal Provision, and ( c )
identically violated HIPAA.

### A.    Class Definition.

107.    Plaintiffs bring this action on behalf of themselves and as the representatives of a
single state of Illinois class (the "Class") defined as follows:

> all Illinois persons who were RightCHOICE individual or group health insurance
> policyholders at the time of the notice of the conversion scheme, who following
> termination of their RightCHOICE policies were either rejected for Unicare
> underwritten coverage or automatically converted into Unicare policies.

### B.    Numerosity.

108.    Plaintiffs, and the class of policyholders, are so numerous that joinder of all
members individually, in one action or otherwise, would be impractical. The class members are
readily identifiable through Defendants' records. In all likelihood, the number of persons
qualifying for class membership exceeds 12,000 individual policyholders and some 12,000 group
members.

109.    Wellpoint described its market withdrawal actions involving its subsidiary,
RightCHOICE, and its reunderwriting or automatic conversion with its other subsidiary, Unicare,
as impacting 12,000 Individual RightChoice members as well as an additional 12,000 small and
large group RightCHOICE members.

110.    Other figures obtained from Defendants show the numerosity of the harmed
individuals and the impact of the automatic conversion as tools to shear off the ill and
unprofitable. As of December 31, 2002 when RightCHOICE policies became void, there were
10,190 RightCHOICE insureds under individual policies:

Case No.                                                           Page 23 of 36

- 3,859 RightCHOICE insureds were enrolled in Unicare after passing underwriting on January 31, 2003;

- 2,350 to 2,366 were enrolled with Unicare after passing underwriting on February 21, 2004;

- 6,331 were automatically enrolled in Unicare with the 250% increase as of January 31, 2003, and that group dwindled to 750 to 778 in February 28, 2003 and as of April 2004, that number was down to 185.

111.    The number of RightCHOICE insureds (individual policies) who applied for coverage by Unicare and Unicare's response were as follows:

- 50.8 % (6,813) RightCHOICE insureds applied for coverage with Unicare,

- 60.9% (4,148) RightCHOICE insureds were approved for Unicare coverage;

- 31.4% (2,138) RightCHOICE insureds were not approved for Unicare for reasons including: health conditions, requested cancellation of application, no response to letter of Unicare offering alternative coverage (such as a "rate-up or waiver"[2]), incomplete or untimely application, and lack of medical information required to "properly evaluate eligibility."

112.    Of the RightCHOICE insureds who were rewritten:

- 72% (2,986) were approved with Unicare without waivers; and

- 28% (1,162) were approved with Unicare with waivers.

---

[2] In this context, the term waiver means an exclusion – the insurance company was excluding coverage, and the insured was waiving coverage for a certain amount of time or indefinitely. Thus, Unicare was issuing a policy excluding coverage for a condition.

Case No.

**C.      Existence and Predominance of Common Questions of Law or Fact.**

113.    Judicial determination of the common legal and factual issues essential to this case would be far more efficient and economical than piecemeal individual determinations.

114.    This action involves questions of law and fact common to plaintiffs and all members of the class involving the material breach of the health insurance policy by defendants, violation of the Illinois Insurance code, and questions of consumer fraud and deceptive trade practices.

115.    These questions predominate over any claims affecting individual members of the class.

116.    Specifically, the following common legal issues predominate;

        1) the illegality of WellPoint's market withdrawal as violating the statutory HIPAA provisions, breach of contract, and as a violation of Illinois Consumer Fraud Act;

        2) WellPoint's obligation to renew without respect to changed health circumstances.

**D.      Appropriateness of a Class Action.**

117.    Class litigation is an appropriate method for the fair and efficient adjudication of the claims involved.  Plaintiffs seek equitable relief, money damages, declaratory relief for all class members.

118.    There is no plain, speedy or adequate remedy other than by maintenance of this representative action because damage to each member is relatively small, making it economically unfeasible for class members to pursue remedies individually.

Case No.

119.    Further, the damages for the plaintiffs and each class member can easily be determined from the records and data possessed by the defendants.

### E.    Adequacy of Representation.

120.    Plaintiffs will fairly and adequately protect and pursue the interests of the members of the Class. Plaintiffs understand the nature of the claims herein, have no disqualifying conditions, and will vigorously represent the interests of the Class.

121.    Plaintiffs' counsel, Clinton A. Krislov, and the law firm of Krislov & Associates, Ltd., of Chicago, Illinois, has experience in consumer class cases and in insurance fraud and breach of insurance policy related cases.

122.    Plaintiffs' counsel, Mark Goldenberg and Thomas Rosenfeld, of Goldenberg Heller Antognoli & Rowland, P.C, also has experience in insurance law, consumer law cases, and other commercial and complex litigation.

123.    Robert Wilson, of Law Offices of Robert C. Wilson, also has experience in insurance law, consumer law cases, and other commercial and complex litigation

124.    Plaintiffs' counsel, The Law Office of Jeffrey Friedman, also has experience in insurance law, consumer law cases, and other commercial and complex litigation.

125.    The named plaintiffs in this action will fairly and adequately act to protect the interest of all members of the class and the named plaintiffs have retained experienced counsel. Plaintiffs' counsel have prosecuted other class actions against major insurance companies.

### VI.    PLAINTIFFS' COUNTS I THROUGH VI

126.    Defendants' actions as described above violate the Illinois code, section 215 ILCS 97/50 (Guaranteed renewability of individual health insurance coverage) (Count I and Count II),

breach of contract (Count III), Illinois Consumer Fraud Act, 815 ILCS 505/1; and Uniform

Deceptive Trade Practices Act, 815 ILCS 510/2 (Count IV).

## COUNT I
## Violation of Illinois HIPAA

127.    Plaintiffs refer to paragraphs 1 through 127 of this complaint and incorporate

those paragraphs as though set forth in full in this cause of action.

128.    The Illinois Insurance code provides at § 215 ILCS 97/50 for the guaranteed renewability

of individual health insurance coverage:

> Sec. 50. Guaranteed renewability of individual health insurance coverage.
>
> (A) *In general.* Except as provided in this Section, a health insurance issuer that
> provides individual health insurance coverage to an individual shall renew or
> continue in force such coverage at the option of the individual.
>
> (B) *General exceptions.* A health insurance issuer may nonrenew or discontinue
> health insurance coverage of an individual in the individual market based only on
> one or more of the following:
>
> \*        \*        \*
>
> (3) *Termination of plan.* The issuer is ceasing to offer coverage in the individual
> market in accordance with subsection ( c ) of this Section and applicable Illinois
> law.
>
> \*        \*        \*
>
> ( C ) (2) *Discontinuance of all coverage.*
>
> (a) *In general.* Subject to subparagraph ( C ), in any case in which a health
> insurance issuer elects to discontinue offering all health insurance coverage in the
> individual market in Illinois, health insurance coverage may be discontinued by
> the issuer only if:
>
> (i) the issuer provides notice to the Director and to each individual of the
> discontinuation at least 180 days prior to the date of the expiration of such
> coverage; and

(ii) all health insurance issued or delivered for issuance in Illinois in such market is discontinued and coverage under such health insurance coverage in such market is not renewed.

(b) Prohibition on market reentry. In the case of a discontinuation under subparagraph (a) in the individual market, the issuer may not provide for the issuance of any health insurance coverage in Illinois involved during the 5-year period beginning on the date of the discontinuation of the last health insurance coverage not so renewed.

(D) Exception for uniform modification of coverage. At the time of coverage renewal, a health insurance issuer may modify the health insurance coverage for a policy form offered to individuals in the individual market so long as the modification is consistent with Illinois law and effective on a uniform basis among all individuals with that policy form.

129.    Defendants' complained of conduct violated 215 ILCS 97/50 (C) (2), by discontinuing all coverage, but continuing to market its policies as automatic conversions, and marketing other policies to its insureds in direct violation of (C) (2) (b).

130.    WellPoint, Unicare and RightCHOICE are health insurance issuers under HIPAA. WellPoint, Unicare and RightCHOICE exploited the transaction with RightCHOICE to avoid these HIPAA provisions and, in violation of the statute, unlawfully re-rated, re-priced and shed undesirable health risks.

131.    Defendants' conversion transaction scheme violated the prohibition from reentering the market during a 5-year period beginning on the date of the discontinuation of the last health insurance coverage not so renewed because they took the opportunity of the conversion transaction to continue to market new WellPoint/Unicare polices.

132.    These HIPAA provisions should be broadly interpreted to protect the policyholders.

Case No.                                                                          Page 28 of 36