IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CHARLOTTE PHILLIPS and BOB MYRICK,
*individually and on behalf of all others
similarly situated*,

        Plaintiffs,

    vs.

WELLPOINT, INC., UNICARE NATIONAL
SERVICES, INC., UNICARE ILLINOIS
SERVICES, INC., UNICARE HEALTH
INSURANCE COMPANY OF THE
MIDWEST, RIGHTCHOICE MANAGED
CARE, INC., and RIGHTCHOICE
INSURANCE COMPANY,

        Defendants.

Case No. 10-cv-357-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on defendants' motion to dismiss (Doc. 26).

Plaintiffs filed a response (Doc. 60) to which defendants replied (Doc. 61). For the following

reasons the Court grants in part and denies in part defendants' motion to dismiss.

## BACKGROUND

This case consists of substantially the same facts as *Cima v. WellPoint Health Networks,*

*Inc.*, No. 05-cv-4127, a case previously before this Court. Drawing the facts from plaintiffs'

well-pleaded complaint, the Court will once again recount the events leading up to the filing of

*Cima* and the present case.

## I.      Factual Background

During the course of expanding its business, defendant WellPoint, Inc. ("WellPoint")[1] acquired defendants RightCHOICE Managed Care, Inc. ("RightCHOICE Managed Care") and RightCHOICE Insurance Company in 2002.  RightCHOICE Managed Care "was an independent company that operated in two markets," one in Illinois and one in Missouri.  Doc. 1-1, p. 27.  In Missouri, RightCHOICE Managed Care operated as Blue Cross Blue Shield of Missouri.  In Illinois, RightCHOICE Managed Care operated as RightCHOICE Insurance Company, servicing approximately 300,000 Illinoisans.

Illinois law required WellPoint to obtain the approval of the Illinois Department of Insurance ("IDOI") prior to completing the Illinois portion of the transaction.  WellPoint made the following representations to the IDOI:

> WellPoint has no present plans to cause [RightCHOICE Managed Care], [RightCHOICE Insurance Company], or any Acquired Subsidiary . . . to merge or consolidate them with any person or person, other than the Merger.  There also are presently no plans to make any other material change in [RightCHOICE Managed Care], [RightCHOICE Insurance Company], or any other Acquired Subsidiary's business operation or corporate structure, other than as may be provided herein or as may arise in the ordinary course of business, and other than to achieve the synergies that normally arise in substantial acquisitions.

The IDOI ultimately approved the transaction and the merger closed on January 31, 2002.  Plaintiffs in both the *Cima* and present case, however, contend that WellPoint had intentions from the beginning of the transaction to re-price or get rid of Illinois policyholders, but misrepresented their intentions to the IDOI to obtain approval.  According to Plaintiffs, WellPoint only desired to acquire the more profitable Missouri

---

[1] As plaintiffs explain in their complaint, "[t]he WellPoint corporate group was the product of WellPoint Health Network Inc. formed from the for-profit conversion of Blue Cross of California."  Doc. 1-1, p. 26.  "WellPoint Inc. was formed by the 2004 merger of WellPoint Health Network Inc. and Anthem Inc."  *Id*.  WellPoint Health Network, Inc. was named as a defendant in the *Cima* complaint.  However, in the instant complaint, the plaintiffs name WellPoint, Inc. as a defendant rather than WellPoint Health Network, Inc.

Blue Cross business and was not interested in the less-profitable Illinois RightCHOICE Insurance Company operations.

It was only four months later, on May 31, 2002, that Unicare/WellPoint wrote a letter to the IDOI informing them of the conversion, and providing the IDOI with a copy of the proposed letter to be sent to policyholders.  Thereafter, WellPoint effected a market withdrawal of RightCHOICE Insurance Company, leaving the Illinois insureds with following options in the transition process: (a) reapply for a Unicare[2] policy, subject to underwriting; (b) be automatically converted to a Unicare policy (with an accompanying 250% premium increase and lesser coverage); or (c) seek coverage elsewhere.  The transition process began on December 31, 2002.  The practical effect of this transition was to leave the ill and infirm with significantly higher premiums after being forced to convert to a Unicare policy or going through the underwriting process.  Thus, as a result of these drastically higher costs, many insureds were forced to withdraw from their insurance policies altogether and either forego insurance coverage or turn to the state for support.  In *Cima*, this Court described defendants' actions as "immoral, oppressive, unethical and unscrupulous."

## II.   Procedural History

### a.   *Cima v. WellPoint Healthcare Networks, Inc.*, 05-cv-4127

The *Cima* complaint was first filed on March 21, 2003, in the Circuit Court for the Second Judicial Circuit, Jefferson County, Illinois, against Unicare Illinois Services, Inc. and WellPoint Health Networks, Inc.  The complaint alleged violations of the Illinois Health Insurance Portability and Accountability Act ("Illinois HIPAA"), breach of contract, violations of the Illinois Consumer Fraud Act ("CFA") and Uniform Deceptive Trade Practices Act

---

[2] Unicare is the brand name of WellPoint's policies offered in Illinois.

("UDTPA"), common law fraud, and breach of defendants' duties of good faith and fair dealing. In their first amended complaint, the *Cima* plaintiffs added Unicare National Services, Inc., Unicare Health Insurance Company of the Midwest, RightCHOICE Managed Care, Inc., and RightCHOICE Insurance Company as defendants.

On June 28, 2005, the *Cima* defendants removed the case to federal court. In its order dated July 11, 2006, granting in part and denying in part the *Cima* defendants' motion to dismiss, this Court dismissed plaintiffs' Illinois HIPAA, CFA and UDTPA deceptive practices, common law fraud, and breach of duty and good faith and fair dealing claims. *Cima v. WellPoint Healthcare Networks, Inc.*, No. 05-cv-4127, 2006 WL 1914107 (S.D. Ill. July 11, 2006). This Court denied plaintiffs' motion for class certification on March 18, 2008. *Cima v. WellPoint Healthcare Networks, Inc.*, No. 05-cv-4127, 250 F.R.D. 374 (S.D. Ill. 2008). Thereafter, on October 22, 2008, this Court granted defendants' motion for partial summary judgment, dismissing plaintiffs' breach of contract claim. *Cima v. WellPoint Healthcare Networks, Inc.*, No. 05-cv-4127, 2008 WL 4671707 (S.D. Ill. Oct. 22, 2008). The parties then settled the remaining CFA unfair practices claim, and the Court entered judgment on August 27, 2009. *Cima v. WellPoint Healthcare Networks, Inc.*, No. 05-cv-4127, Doc. 256 (S.D. Ill. Aug. 27, 2009).

### b.  Current Case – *Phillips v. WellPoint, Inc.*, 10-cv-357

On March 27, 2010, plaintiffs Charlotte Phillips and Bob Myrick filed their four-count class action complaint in the Circuit Court for the Third Judicial Circuit, Madison County, Illinois, against defendants WellPoint, Inc., Unicare National Services, Inc., Unicare Illinois Services, Inc., Unicare Health Insurance Company of the Midwest, RightCHOICE Managed Care, and RightCHOICE Insurance Company. Plaintiffs alleged violations of Illinois HIPAA,

breach of contract, and violations of the CFA and UDTPA.  Thereafter, defendants filed a notice of removal removing this action on the basis of federal question jurisdiction and the Class Action Fairness Act.  Presently before the Court is defendants' motion to dismiss plaintiffs' complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## ANALYSIS

When considering a Rule 12(b)(6) motion to dismiss, the Court must "construe [the complaint] in the light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in [the non-moving] party's favor."  *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010).  The complaint must "contain sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  With this standard in mind, the Court will now consider defendants' arguments for the dismissal of plaintiffs' claims.

### I.    Illinois HIPAA: Counts I and II

Counts I and II of plaintiffs' complaint allege violations of Illinois HIPAA.  Specifically, the following portions of Illinois HIPAA are at issue:

(C) Requirements for uniform termination of coverage
(1) Particular type of coverage not offered. In any case in which an issuer decides to discontinue offering a particular type of health insurance coverage offered in the individual market, coverage of such type may be discontinued by the issuer only if:
(a) the issuer provides notice to each covered individual provided coverage of this type in such market of such discontinuation at least 90 days prior to the date of the discontinuation of such coverage;
(b) the issuer offers, to each individual in the individual market provided coverage of this type, the option to purchase any other individual health insurance coverage currently being offered by the issuer for individuals in such market; and

(c) in exercising the option to discontinue coverage of that type and in offering the option of coverage under subparagraph (b), the issuer acts uniformly without regard to any health status-related factor of enrolled individuals or individuals who may become eligible for such coverage

(2) Discontinuance of all coverage

(a) In general. Subject to subparagraph (c), in any case in which a health insurance issuer elects to discontinue offering all health insurance coverage in the individual market in Illinois, health insurance coverage may be discontinued by the issuer only if:

(i) the issuer provides notice to the Director and to each individual of the discontinuation at least 180 days prior to the date of the expiration of such coverage;

(ii) all health insurance issued or delivered for issuance in Illinois in such market is discontinued and coverage under such health insurance coverage in such market is not renewed; and

(iii) in the case where the issuer has affiliates in the individual market, the issuer gives notice to each affected individual at least 180 days prior to the date of the expiration of the coverage of the individual's option to purchase all other individual health benefit plans currently offered by any affiliate of the carrier.

(b) Prohibition on market reentry. In the case of a discontinuation under subparagraph (a) in the individual market, the issuer may not provide for the issuance of any health insurance coverage in Illinois involved during the 5-year period beginning on the date of the discontinuation of the last health insurance coverage not so renewed.

215 ILCS 97/50(C)(1)-(2).  Count I alleges defendants violated 215 ILCS 97/50(C)(2) "by discontinuing all coverage, but continuing to market its policies as automatic conversions, and marketing other policies to its insureds," and "because they took the opportunity of the conversion transaction to continue to market new WellPoint/Unicare policies."  Doc. 1-1, p. 28. Count II alleges defendants violated 215 ILCS 97/50(C)(1) because "[d]efendants Unicare/WellPoints' automatic conversions and re-application process expressly did consider health status-related factors."  Doc. 1-2, p. 2.

The *Cima* plaintiffs' complaint's first two counts alleged Illinois HIPAA violations identical to the allegations in the instant case. *See Cima*, Doc. 2-1, p. 37-39. In considering the *Cima* motion to dismiss, this Court noted that a private right of action is not *explicit* in Illinois HIPAA, and then went on to analyze whether a private right of action was *implicit* in Illinois HIPAA. According to *Fisher*, a private right of action is implied if

> (1) the plaintiff is a member of the class for whose benefit the statute was enacted; (2) the plaintiff's injury is one the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statute; and (4) implying a private right of action is necessary to provide an adequate remedy for violation of the statute.

*Fisher v. Lexington Health Care, Inc.*, 722 N.E.2d 1115, 1117-18 (Ill. 1999). Ultimately, this Court concluded that a private right of action was not implicit in Illinois HIPAA and dismissed Counts I and II of the *Cima* plaintiffs' complaint. Specifically, this Court did not find that the third or fourth prongs of the *Fisher* test were met.

Under the third prong, a court must find a private right of action is consistent with the underlying purpose of the statute. This Court noted that the Illinois Department of Insurance ("IDOI") has authority to enforce the relevant provisions of Illinois HIPAA[3], and that fact provided evidence that the legislature did not intend to create a private right of action. However, an Illinois appellate court had found that agency enforcement power alone was not sufficient to preclude a private right of action. *Casualty Ins. Co. v. Hill Mech. Group*, 753 N.E.2d 370, 378 (Ill. App. Ct. 2001). That Illinois appellate court suggested that whether agency enforcement power was "sufficient to negate a private right is an issue that sometimes requires a factual inquiry beyond what is appropriate in a motion to dismiss." *Cima v. WellPoint Healthcare Networks, Inc.*, No. 05-cv-4127, 2006 WL 1914107, at *8 (S.D. Ill. July 11, 2006) (citing

---

[3] The Director of the IDOI has the authority to "institute such actions or other lawful proceedings as he may deem necessary for the enforcement of the Illinois Insurance Code" or to request the Illinois Attorney General to do so. 215 ILCS 5/401(d).

*Casualty Ins.*, 753 N.E.2d at 378).  The *Cima* plaintiffs asserted their case required such a factual

inquiry.  This Court concluded that "[e]ven if the Court were to accept this conclusion, *which it*

*is hesitant to do*, it would be of little consequence given the Court's findings below [concerning

the fourth prong]."[4]  *Cima v. WellPoint Healthcare Networks, Inc.*, No. 05-cv-4127, 2006 WL

1914107, at *8 (S.D. Ill. July 11, 2006) (emphasis added).

      This Court held that the fourth prong of the *Fisher* test was not satisfied because a private

right of action was not necessary to provide an adequate remedy for violation of the statute.  As

the *Phillips* plaintiffs point out, in *Cima*, this Court concluded that the *Cima* plaintiff's CFA

claim provided an avenue by which plaintiffs could enforce their rights.  Doc. 60, p. 3; *Cima v.*

*WellPoint Healthcare Networks, Inc.*, No. 05-cv-4127, 2006 WL 1914107, at *9 (S.D. Ill. July

11, 2006).  Plaintiffs' argue, however, that because this Court denied class certification on the

*Cima* plaintiff's CFA claim, the absent class members have no available relief absent a private

Illinois HIPAA cause of action.  Doc. 60, p. 4.

      The *Phillips* plaintiffs, however, grossly understate this Court's *Cima* ruling with regard

to the fourth prong.  This Court found "it difficult to credit" the *Cima* plaintiffs' assertion that

without an Illinois HIPAA remedy, "they have no other avenue to enforce their rights."  *Cima v.*

*WellPoint Healthcare Networks, Inc.*, No. 05-cv-4127, 2006 WL 1914107, at *9 (S.D. Ill. July

11, 2006).  Specifically, this Court considered the *Cima* plaintiffs' CFA, breach of contract, and

common law fraud claims.  This Court also went on to conclude that the fourth prong was not

met because

> [u]nder the Code, the Director [of the IDOI] has the explicit authority to compel
> compliance with the Code's provisions – by herself, or through the Attorney
> General.   Even if the IDOI improvidently gave its blessing (formally or
> informally) to the conversion and withdrawal here, this has little bearing on

---

[4] Plaintiffs' Brief Opposing Defendants' Motion to Dismiss (Doc. 60) erroneously states that this Court "found the
first criteria [of *Fisher*] for an implied HIPAA private right of action were amply met [in *Cima*].

effectiveness of the entire Act.  Accordingly, the Court need not decide whether defendants complied with HIPAA here.

*Cima v. WellPoint Healthcare Networks, Inc.*, No. 05-cv-4127, 2006 WL 1914107, at *11 (S.D. Ill. July 11, 2006).

Plaintiffs fail to cite any authority suggesting this Court was incorrect in concluding that a private right of action does not exist under Illinois HIPAA.  Further, the Court is unable to find any authority indicating its conclusion in *Cima* was incorrect.  Accordingly, this Court finds, for the same reasons it did in *Cima*, that there is no private right of action under Illinois HIPAA.  Thus, the Court grants defendants' motion to dismiss with respect to Counts I and II of plaintiff's complaint.

## II.     Breach of Contract: Count III

Next, defendants' allege that plaintiff's breach of contract claim should be dismissed against all defendants who were not a party to the plaintiffs' RightCHOICE contracts.  In their complaint, plaintiffs allege that defendants breached their contractual duties arising from the health insurance policies as follows:

> 142.   Defendants owed duties and obligations to Plaintiffs and members of the class under the Subject Policies at issue, among others, to renew and not discontinue the policies except as allowed under the terms of the Subject Policies.
>
> 143.   Defendants materially breached the terms and provisions of the subject policies owned by Plaintiffs and class members when it discontinued Plaintiffs' insurance with RightCHOICE and gave notice that the RightCHOICE plans will no longer be available shortly after and as a result of the merger of RightCHOICE and WellPoint, and then either forcing the insureds to renew their health insurance coverage under a new WellPoint/Unicare policy or automatically be enrolled in the WellPoint – Unicare 1000 Deductible Plan.

Doc. 1-2, p. 3.

Defendants point out that this claim, like the first two claims, is substantially similar to the breach of contract claim made by the *Cima* plaintiffs.  In its order granting the *Cima* defendants' motion for partial summary judgment, this Court dismissed all the *Cima* defendants[5] with respect to the *Cima* breach of contract claim.  This Court found that WellPoint did not assume the contractual liabilities of its subsidiary, RightCHOICE, and that the *Cima* plaintiffs failed to point to any law that imposed such contractual liability.  The *Cima* plaintiffs further failed to provide evidence that Unicare or WellPoint were alter egos of RightCHOICE that would justify the Court to disregard the corporate form.  The Court also found that RightCHOICE was entitled to summary judgment on the breach of contract claim "[b]ecause [the *Cima* p]laintiffs have not shown that RightCHOICE and Unicare are alter egos, [the *Cima* p]laintiffs cannot sustain their argument that RightCHOICE did not legitimately withdraw from the Illinois market as required by HIPAA."   *Cima v. WellPoint Healthcare Networks, Inc.*, No. 05-cv-4127, 2008 WL 4671707, at *4-5 (S.D. Ill. Oct. 22, 2008).

The Court agrees that plaintiffs' breach of contract claim appears to be identical to the *Cima* plaintiffs' claim.  However, the motion under consideration here is a motion to dismiss, not a motion for summary judgment.  Where a summary judgment motion is at issue, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists.  Fed. R. Civ. P. 56(e)(2); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). However, where a motion to dismiss is at issue, the complaint must simply "contain sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

---

[5] The Court notes that the defendants in the current case are not identical to the defendants in *Cima*.  In *Cima*, the defendants were as follows:  WellPoint Health Networks, Inc., Unicare National Services, Inc., Unicare Illinois Services, Inc., Unicare Health Insurance Company of the Midwest, RightCHOICE Managed Care, Inc., and RightCHOICE Insurance Company.  All of the defendants in *Cima* are named in the present case with the exception of WellPoint Health Networks, Inc.  Rather, the present case names WellPoint, Inc., as a defendant.

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  Accordingly, the standards are different.  Further, the *Phillips* plaintiffs' breach of

contract claim cannot be precluded simply because the Court granted summary judgment for the

*Cima* defendants on the *Cima* plaintiffs' breach of contract claim.  *See Smith v. Bayer Corp.*, 131

S. Ct. 2368, 2379 (2011) (an unnamed member of a proposed but uncertified class in a separate

action is not a "party" and thus cannot be precluded).  Whether plaintiffs' breach of contract

claim will survive a motion for summary judgment is another matter that may be taken up at the

appropriate time.

Otherwise, with the exception of RightCHOICE, defendants argue that plaintiffs' breach

of contract claim should be dismissed because defendants were not parties to the contract.  Just

as the Court explained to the *Cima* defendants, the defendants here have failed to direct the Court

to the applicable law to determine whether the defendants are liable under a successor liability

theory.  Also, as the Court noted in *Cima*, the defendants may be liable under other theories.

Accordingly, defendants' motion to dismiss with regard to plaintiffs' breach of contract claim is

denied as to all defendants.

### III.    CFA and UDTPA: Count IV

Finally, defendants contend that plaintiffs' CFA and UDTPA claims should be dismissed

because they are time-barred.  Defendants further contend that plaintiffs' deceptive conduct

claims under the CFA and UDTPA fail for the same reasons they failed in *Cima*.  In their

complaint, plaintiffs allege that defendants violated the CFA and UDTPA when

> 147. . . . [d]efendants misrepresented: (a) the true reason for the withdrawal, (b)
> the existence of regulatory approval for the discontinuation of the [p]laintiffs'
> RightCHOICE policies; and (c) the true reason for the re-underwriting and
> conversion process.

Doc. 1-2, p. 3. Specifically, plaintiffs allege a deceptive act or practice occurred by "[d]efendants' conduct of canceling the insurance policy and then requiring the insureds to reapply, co[n]vert, or forego coverage . . . ." Doc. 1-2, p. 5. Plaintiffs further allege an actionably unfair practice under the CFA in its complaint in which it states

> 156. . . . The [d]efendants' policy to shed undesirable health risks by re-rating and re-pricing health insurance policies by automatically converting policies, demanding reapplication, not renewing polici[e]s, or discontinuing policies is also unfair.

> 157. Defendants' policy is an unethical pricing practice that is oppressive and unscrupulous because it was done for its own profit at the expense of the insureds causing substantial injury to these health insurance consumers.

Doc. 1-2, pp. 5-6. First, the Court will consider defendants' argument that plaintiff's deceptive practices claims under the CFA and UDTPA should be dismissed for the same reasons this Court dismissed the *Cima* plaintiffs' deceptive practices claims.

### A. Plaintiffs' Deceptive Conduct and Practices Claims Under the CFA and UDTPA Fail for the Same Reasons the *Cima* Plaintiffs' Claims Failed

As quoted above, plaintiffs allege actionable deception under both the CFA and UDTPA. Similarly, the *Cima* complaint alleged defendants' actions were deceptive because they misrepresented "(a) the true reason and lawfulness of the discontinuation of the Plaintiffs' RightCHOICE policies; and (b) the true reason for the re-underwriting and conversion process." *Cima*, Doc. 2. Both the *Phillips* and *Cima* plaintiffs' further identified the deceptive act or practice as "[d]efendants' conduct of canceling the insurance policy and then requiring the insureds to reapply, co[n]vert, or forego coverage." Doc. 1-2, p. 5; *Cima*, Doc. 2-1, p. 20. Accordingly, the *Phillips* plaintiffs make essentially the same claim as the *Cima* plaintiffs. Defendants allege that the *Phillips* plaintiffs' deceptive conduct claims under the CFA and

12

UDTPA claims should be dismissed for the same reason this Court dismissed the *Cima* plaintiffs' identical claims.

### i.   CFA - Deceptive Conduct & Practices

In *Cima*, the Court found that "[t]o the extent plaintiffs base their claims on defendants' representation of the legality of the withdrawal and conversion process, their claims fail." *Cima v. WellPoint Healthcare Networks, Inc.*, No. 05-cv-4127, 2006 WL 1914107, at *14 (S.D. Ill. July 11, 2006); ("Generally, a deceptive representation or omission of law does not constitute a violation of the [CFA] because both parties are presumed to be equally capable of knowing and interpreting the law."). The Court further found that the *Cima* plaintiffs failed to allege they were aware of WellPoint's statements to regulatory authorities, and thus failed to state with particularity the defendants' alleged misrepresentations. *See Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 861 (Ill. 2005) (to establish the requisite proximate causation under the CFA, a plaintiff must allege he was actually deceived by the statement or omission); Fed. R. Civ. P. 9(b) ("[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake, shall be stated with particularity"). The *Phillips* plaintiffs make no additional allegations that would change the analysis this Court undertook in *Cima*. Accordingly, insofar as plaintiffs base their claims on defendants' representations of the legality of the withdrawal and conversion process, and WellPoint's representations to the IDOI, plaintiffs' claims fail for the same reasons the *Cima* plaintiffs' claims failed. *Cima v. WellPoint Healthcare Networks, Inc.*, No. 05-cv-4127, 2006 WL 1914107, at *14-16 (S.D. Ill. July 11, 2006).

Further, in *Cima*, this Court dismissed the *Cima* plaintiffs' claims to the extent they alleged that defendants failed to state or misstated the true reasons for the discontinuation of their policies, withdrawal, and conversion. The CFA does not apply to "[a]ctions or transactions

specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States."  815 ILCS 505/10b(1).  The Court found that the Director of the IDOI had the statutory authority to enforce the Illinois Insurance Code. *See* 215 ILCS 5/401.  First, the Court noted that "215 ILCS 97/30 does not mandate the disclosure of the reason for a withdrawal, it only requires notice."  Plaintiffs do not dispute that defendants gave the proper notice.  The fact that they did not disclose the reason for the withdrawal is irrelevant because the statute does not require such a disclosure.  Further, IDOI reviewed and informally approved the content of the withdrawal letters.  *Cima v. WellPoint Healthcare Networks, Inc.*, No. 05-cv-4127, 2006 WL 1914107, at *17 (S.D. Ill. July 11, 2006). Again, the *Phillips* plaintiffs make no additional allegations that would change the *Cima* analysis.  Accordingly, for the same reasons this Court found the *Cima* plaintiff's deceptive conduct claim should be dismissed, this Court finds dismissal of the *Phillips* deceptive conduct claim appropriate.  *Cima v. WellPoint Healthcare Networks, Inc.*, No. 05-cv-4127, 2006 WL 1914107, at *14-17 (S.D. Ill. July 11, 2006).  This Court will next consider whether the *Phillips* plaintiffs' UDTPA claim should be dismissed.

### ii. UDTPA – Deceptive Conduct & Practices

Again, plaintiffs' allegations that defendants' conduct violated the UDTPA are identical to the *Cima* plaintiffs' allegations.  The UDTPA provides, in pertinent part:

> A person engages in a deceptive trade practice when, in the course of his or her business, vocation or occupation, the person: . . . (5) represents that goods or services have sponsorship, . . . characteristics, . . . benefits, . . . that they do not have or that a person has a sponsorship, . . . status, affiliation, or connection that he or she does not have; . . . (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

815 ILCS 510/2(a).  As this Court noted in *Cima*, the UDTPA has a similar provision to 10(b)(1) under the CFA "which removes from the Act's purview 'conduct in compliance with the orders

or rules or a statute administered by a . . . state . . . agency." *Cima v. WellPoint Healthcare Networks, Inc.*, No. 05-cv-4127, 2006 WL 1914107, at \*21 (S.D. Ill. July 11, 2006) (citing 815 ILCS 510/4). Accordingly, because the Court found that the IDOI's informal approval of the defendant's letters provided authorization for purposes of the CFA, the Court found that the *Cima* plaintiff's UDTPA claim must fail because the *Cima* defendants' conduct was exempted under Section 4 of the UDTPA. *See Price v. Philip Morris, Inc.*, 848 N.E.2d 1, 54 (Ill. 2005) (citing *Mario's Butcher Shop & Food Center, Inc. v. Armour & Co.*, 574 F. Supp. 653, 655 (N.D. Ill. 1983) (noting parallel between exemption clauses of the Consumer Fraud Act and the Deceptive Practices Act)). Thus, plaintiffs' UDTPA claims fail for the same reason the *Cima* plaintiffs' claims failed.

Accordingly, defendants' motion to dismiss is granted with respect to plaintiffs' deceptive conduct claims under the CFA and UDTPA. Next, the Court will consider whether plaintiff's remaining unfair conduct claim under the CFA can survive defendants' motion to dismiss.

### B. *Cima* Tolled the Statute of Limitations

Next, defendants argue that plaintiffs' CFA and UDTPA claims are time-barred because the *Cima* class action did not toll the statute of limitations. As defendants point out, the statute of limitations for actions arising under the UDTPA and CFA is three years. 815 ILCS 505/10a(e); s*ee McCready v. Ill. Sec'y of State*, 888 N.E.2d 702, 709-10 (Ill. App. Ct. 2008) (explaining that the three-year statute of limitations established under the CFA also applies to the UDTPA). Accordingly, absent a finding that *Cima* tolled the statute of limitations, plaintiffs' CFA and UDTPA claims would clearly  be time-barred.

15

Federal courts must use state-law tolling principles where state law provides the statute of limitations. *Shropshear v. Corp. Counsel of City of Chi.*, 375 F.3d 593, 596 (7th Cir. 2001). In *American Pipe*, the United States Supreme Court held that the filing of a class action in federal court tolls the statute of limitations for purported class members who move to intervene after the denial of class action status. *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553 (1974). The Illinois Supreme Court adopted the *American Pipe* rule in *Steinberg v. Chi. Med. Sch.*, 371 N.E.2d 634 (1977). Thereafter, the United States Supreme Court extended *American Pipe*, holding that the statute of limitations also tolls for purported class members who file a separate suit in federal court after class status in the first federal case is denied. *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 350 (1983). The Court reasoned that failure to toll the statute of limitations would create inefficiency in the system as purported plaintiffs would rush to intervene or file separate actions prior to the expiration of the statute of limitations. *American Pipe*, 414 U.S. at 553-54; *Crown, Cork & Seal*, 462 U.S. at 350-51.

While Illinois adopted the policy behind *American Pipe* and *Crown, Cork & Seal*, it rejected "cross-jurisdictional tolling", holding "that the Illinois statute of limitations is not tolled during the pendency of a class action in federal court." *Portwood v. Ford Motor Co.*, 701 N.E.2d 1102, 1104 (Ill. 1998). Again, this decision was driven by concerns of efficiency and economy. *Id*. The Court reasoned that cross-jurisdictional class tolling in Illinois would over-burden Illinois courts because it "would encourage plaintiffs from across the country to bring suit here following dismissal of their class action in federal court."[6] *Id*.

Illinois courts thus made it clear that the Illinois statute of limitations would not toll for a case filed in an Illinois court subsequent to a class action filed in federal court. However,

---

[6] Indeed, that was the case in *Portwood*. In 1981, a group of plaintiffs filed suit in the United States District Court for the District of Columbia. *Id*. at 1102. After denial of class certification, approximately ten years later another group of plaintiffs filed a similar suit in Illinois state court. *Id*. at 1103.

*Portwood* still maintained that "tolling the statute of limitations for individual actions filed after the dismissal of a class action is sound policy when both actions are brought in the same court system." *Portwood v. Ford Motor Co.,* 701 N.E.2d 1102, 1104 (Ill. 1998). As the District Court for the Northern District acknowledged, "[i]t is clear from the Illinois Supreme Court's opinion [in *Portwood*] that the term 'cross-jurisdictional' refers to situations where the same claims have been filed in different forums." *Villanueva v. Davis Bancorp, Inc.*, 2011 WL 2745936, at *5 (N.D. Ill. 2011).

The Seventh Circuit addressed a similar issue in *Sawyer v. Atlas Heating and Sheet Metal Works, Inc.*, 642 F.3d 560 (2011). In *Sawyer*, defendant alleged that cross-jurisdictional tolling was at issue where the first state court class action was abandoned by the plaintiff before class certification, and the second class action was filed in state court and then removed. *Id.* at 561. The Seventh Circuit explained that this scenario was not cross-jurisdictional because "*both* suits began in state court." *Id.* at 562. "A suit's removal does not change the substantive rule of decision – and the statute of limitations, unlike procedures for certifying class actions, is substantive." *Id.*

Here, the policy concerns noted in *Portwood* are not at issue. This is not a case where plaintiffs filed a case in federal court, and then rushed to another jurisdiction to take advantage of a tolling benefit. Rather, both the *Cima* and *Phillips* plaintiffs, like the plaintiffs at issue in *Sawyer*, began their suits in Illinois state courts. It was then only by the action of the defendants that those cases were removed to federal court. Rather, the policy goals of *American Pipe* and *Crown, Cork & Seal* are furthered by a decision allowing the *Cima* action to toll the statute of limitations in the present case. *See Villanueva*, at *5 (quoting *In re Copper Antitrust Litig.*, 436 F.3d 782, 794 (7th Cir. 2006) ("The essential rational of *American Pipe* is that members of a

class whose claims are embodied in a class action should not be required by the exigencies of the statute of limitations to clutter the courts with duplicative lawsuits so long as their claims are encompassed by the class action."). Accordingly, cross-jurisdictional tolling is not at issue in this case, and the statute of limitations was tolled until this court denied the motion for class certification in *Cima*.

Plaintiffs contend that the statute of limitations was triggered on December 31, 2002, when the conversion process began. *Cima* was first filed in state court on March 21, 2003, at which time the statute of limitations was tolled. It was not until March 18, 2008, when the *Cima* class certification was denied, that the statute of limitations began to run. The *Phillips* complaint was filed in state court on March 17, 2010. Accordingly, from December 31, 2002, until March 21, 2003, 80 days passed. Another 727 days passed from the denial of class certification *Cima* to the filing of the instant complaint. Accordingly, plaintiffs' remaining unfair practice claim under the CFA is not barred the 1095-day statute of limitations.

### C. *Cima's* Addition of Parties in its First Amended Complaint Relates Back to its Original Complaint.

Defendants further contend that even if the *Cima* class action did toll the statute of limitations, the claims would be time-barred as to all of the defendants except the defendants first named in the original *Cima* complaint. Under Illinois law, the addition of new defendants relates back to the original date of filing

> if all the following terms and conditions are met: (1) the time prescribed or limited had not expired when the original action was commenced; (2) the person, within the time that the action might have been brought or the right asserted against him or her plus the time for service permitted under Supreme Court Rule 103(b), received such notice of the commencement of the action that the person will not be prejudiced in maintaining a defense on the merits and knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him or her; and (3) it appears from the original and amended pleadings that the cause of action asserted in the

> amended pleading grew out of the same transaction or occurrence set up in the
> original pleading, even though the original pleading was defective in that it failed
> to allege the performance of some act or the existence of some fact or some other
> matter which is a necessary condition precedent to the right of recovery when the
> condition precedent has in fact been performed, and even though the person was
> not named originally as a defendant. For the purpose of preserving the cause of
> action under those conditions, an amendment adding the person as a defendant
> relates back to the date of the filing of the original pleading so amended.

735 ILCS 5/2-616 (d).  The federal relation back rule, containing a similar mistake prong, states

as follows:

> An amendment to a pleading relates back to the date of the original pleading
> when: . . . (C) the amendment changes the party or the name of the party against
> whom a claim asserted, . . . . the party to be brought in by amendment: . . . (ii)
> knew or should have known that the action would have been brought against it,
> but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C).  When *Cima* was first filed in the Circuit Court of the Second

Judicial Circuit, Jefferson County, Illinois, on March 21, 2003, plaintiffs named only Unicare

Illinois Services, Inc., and WellPoint Health Networks, Inc., as defendants.  In their first

amended class action complaint, plaintiffs added Unicare National Services, Inc., Unicare Health

Insurance Company of the Midwest, RightCHOICE Managed Care, and RightCHOICE

Insurance Company as defendants.  In *Cima*, this Court found that plaintiffs failed to meet the

mistake prong under both the federal and Illinois relation-back analyses.  Accordingly,

defendants conclude that the *Phillips* plaintiffs' CFA and UDTPA claims are time-barred as to

the newly-added defendants in the first amended complaint, because those defendants did not

relate back to the March 21, 2003 complaint.

  However, since *Cima*, the Supreme Court has resolved the circuit dispute on the relation

back doctrine and clarified that "relation back under Rule 15(c)(1)(C) depends on what the party

to be added knew or should have known, not on the amending party's knowledge or its

timeliness in seeking to amend the pleading." *Krupski v. Costa Crociere, S. p. A.*, 130 S. Ct. 2485, 2490 (2010). As a result of *Krupski*, the Seventh Circuit concluded that

> [t]he only two inquiries that the district court is now permitted to make in deciding whether an amended complaint relates back to the date of the original one are, first, whether the defendant who is sought to be added by the amendment knew or should have known that the plaintiff, had it not been for a mistake, would have sued him instead or in addition to suing the named defendant; and second, whether, even if so, the delay in the plaintiff's discovering his mistake impaired the new defendant's ability to defend himself.

*Joseph v. Elan Motorsports Techs. Racing Corp.*, 638 F.3d 555, 559-60 (7th Cir. 2011). Illinois appellate courts have also adopted *Krupski* in their relation back analysis. *See Borchers v. Franciscan Tertiary Province of Sacred Heart, Inc.*, 962 N.E.2d 29, 47-49 (Ill. App. Ct. 2d Dist. 2011); *see also Maggi v. Ras Dev., Inc.*, 949 N.E.2d 731, 742-43 (Ill. App. Ct. 1st Dist. 2011) (noting that "[t]he current iteration of the [Illinois] relation back doctrine is patterned after Federal Rule of Civil Procedure 15(c)" and applying the *Krupski* analysis).

In *Krupski*, plaintiff suffered an injury aboard defendants' cruise ship. *Krupski*, 130 S. Ct. at 2490. Three weeks before the statute of limitations expired, plaintiff filed a diversity action in the district court naming Costa Cruise as the lone defendant. *Id.* Thereafter, Costa Cruise, the North American sales and marketing agent for Costa Crociere, informed plaintiff it was not the proper defendant three times, and alerted plaintiff that Costa Crociere was the proper defendant. *Id.* at 2491. It was not until five months later, after the statute of limitations had expired, that plaintiff added Costa Crociere as a defendant in an amended complaint. *Id.* Costa Crociere's counsel, the same counsel for Costa Cruise, moved to dismiss Costa Crociere on the grounds that the amended complaint did not relate back, and the district court denied relation back. *Id.*

20

The Eleventh Circuit found that plaintiff knew or should have known of Costa Crociere's identity as a defendant because that information was listed on her cruise ticket. *Id*. at 2492. Further, after learning of Costa Crociere's identity from Costa Cruise, plaintiff delayed 133 days from the filing of her first complaint to the time she filed her amended complaint to add Costa Crociere. *Id*. Thus, the Eleventh Circuit found that plaintiff did not make a mistake within the meaning of Rule of 15(b) and the district court did not err in denying relation back. *Id*.

The Supreme Court, however, reversed the Eleventh Circuit, clarifying that "[t]he question under Rule 15(c)(1)(C)(ii) is not whether Krupski knew or should have known the identity of Costa Crociere as the proper defendant, but whether Costa Crociere knew or should have known that it would have been named as a defendant but for an error. *Id*. at 2493. Broadly defining the term "mistake" in Rule 15, the Supreme Court explained that

> a plaintiff might know that the prospective defendant exists but nonetheless harbor a misunderstanding about his status or role in the events giving rise to the claim at issue, and she may mistakenly choose to sue a different defendant based on that misimpression. That kind of deliberate but mistaken choice does not foreclose a finding that Rule 15(c)(1)(C)(ii) has been satisfied.

*Id*. at 2494.

Here, as this Court stated in *Cima*, "it is clear that statutory requirements (1) and (3) [of 735 ILCS 5/2-616(d)] are met in this case." *Cima*, No. 05-cv-4127, Doc. 58, p. 13. With guidance from *Krupski* and *Joseph*, the Court finds that statutory requirement (2) is met as well. As *Krupski* explained, what the *Phillips* plaintiffs knew or should have known is not the question. The appropriate question is what the prospective *Cima* defendants knew or should have known. The *Cima* plaintiffs made essentially the same claims in their original complaint as they made in their first amended complaint. In the *Cima* complaint, the *Cima* plaintiffs complained of the method by which WellPoint acquired RightCHOICE and marketed and/or

automatically converted RightCHOICE insureds to Unicare policies. All defendants in this case are either successors or affiliates of WellPoint. As such, they can claim no surprise or prejudice from this litigation. Further, defendants have not suggested in their motion to dismiss that their ability to defend themselves was impaired. Accordingly, the Court finds that plaintiff's first amended complaint in *Cima* relates back to its original complaint, and the present claim is still within the statute of limitations with regard to the defendants added in the *Cima* first amended complaint.

**D. Defendants Fail to Support their Argument that the Statute of Limitations Expired with Respect to WellPoint, Inc.**

Next, defendants assert that the CFA and UDTPA claims against WellPoint, Inc. must fail. WellPoint, Inc. was not added as a defendant until the filing of the *Phillips* complaint in March 2010. Plaintiffs' complaint explains that "WellPoint corporate group was the product of WellPoint Health Network, Inc. formed from the for-profit conversion of Blue Cross of California." Doc. 1-1, p. 26. "WellPoint Inc. was formed by the 2004 merger of WellPoint Health Network Inc. and Anthem Inc." *Id*. Defendants argue that the statute of limitations never tolled with respect to WellPoint, Inc. Defendants, however, do not explain the relationship between WellPoint Health Network, Inc., or cite to any authority supporting their conclusion. Accordingly, the Court denies defendants' motion to dismiss with respect to its statute of limitations argument.

**CONCLUSION**

Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** defendants' motion to dismiss (Doc. 26) as follows:

1. The Court **GRANTS** defendants' motion with respect to plaintiff's Illinois HIPAA claims, and therefore **DISMISSES** Counts I and II;

2. The Court **DENIES** defendants' motion with respect to plaintiffs' breach of contract claim contained in Count III; and

3. The Court **GRANTS IN PART AND DENIES IN PART** defendants' motion with respect to plaintiff's CFA and UDTPA claims contained in Count IV.  Specifically, the Court **GRANTS** defendants' motion with respect to plaintiffs' CFA and UDTPA deceptive practices claims, and **DENIES** defendants' motion with respect to plaintiffs' CFA unfair practice claim.

Accordingly, plaintiffs' breach of contract claim contained in Count III and CFA unfair practice claim contained in Count IV remain pending against all defendants.

**IT IS SO ORDERED**.

**DATED:** September 27, 2012

s/ J. Phil Gilbert<br>
**J. PHIL GILBERT**<br>
**DISTRICT JUDGE**