IN UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHARLOTTE PHILLIPS and BOB MYRICK, *individually and on behalf of all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>WELLPOINT INC., UNICARE NATIONAL SERVICES, INC., UNICARE ILLINOIS SERVICES, INC., UNICARE HEALTH INSURANCE COMPANY OF THE MIDWEST, RIGHTCHOICE MANAGED CARE, INC., and RIGHTCHOICE INSURANCE COMPANY,<br><br>Defendants. | No. 10-cv-00357-JPG |

**MEMORANDUM AND ORDER**

This matter comes before the Court on plaintiffs' combined motion and memorandum in support of class certification (Doc. 68). Defendants filed a response (Doc. 69) and a supplemental memorandum (Doc. 87). Plaintiffs filed a supplemental brief (Doc. 98) and a reply (Doc. 118) to defendants' response. For the following reasons, the Court denies plaintiffs' motion for class certification.

**I. Facts**

The claims in this case arise from the same events underlying the claims in *Cima v. WellPoint Health Networks, Inc.*, No. 05-cv-4127, previously before this Court. The Court has recounted the factual and procedural background of this claim in detail on several occasions, *see e.g., Cima v. WellPoint Healthcare Networks, Inc.*, No. 05-cv-4127, 2006 WL 1914107 (S.D. Ill.

July 11, 2006); *Cima v. WellPoint Health Networks, Inc.*, 250 F.R.D. 374 (S.D. Ill. 2008); *Phillips v. WellPoint, Inc.*, No. 10-cv-357, Doc. 207 (S.D. Ill. Sept. 27, 2012).

For purposes of this motion for class certification, the relevant facts are as follows. Named plaintiffs and proposed class members in this case were insureds of RightCHOICE Insurance Company and/or its parent corporation RightChoice Managed Care, Inc. ("RightCHOICE" collectively). In 2001, WellPoint, Inc.[1] ("WellPoint") acquired RightCHOICE. WellPoint represented to the Illinois Department of Insurance that it had no plans to make material changes to RightCHOICE's business. Plaintiff's contend, however, that this was a misrepresentation made only for the purposes of obtaining regulatory approval and WellPoint intended all along to withdraw RightCHOICE from the Illinois market. Thereafter, RightCHOICE did withdraw from the Illinois market, and RightCHOICE insureds were forced to convert to more expensive polices through Unicare National Services, Inc., Unicare Illinois Services, Inc., and Unicare Health Insurance Company of the Midwest, ("Unicare" collectively) which are subsidiaries of WellPoint. Insureds who could not afford the higher policy rates were forced to go through underwriting leaving many infirm insureds ineligible for insurance or eligible only for higher-priced insurance. Those who were ineligible or could not afford to accept a Unicare policy were forced to seek other coverage or go without health insurance.

Plaintiffs originally brought four claims including two Illinois Health Insurance Portability and Accountability Act ("Illinois HIPAA") claims, one breach of contract claim, and one Illinois Consumer Fraud Act and Uniform Deceptive Trade Practices Act claim. Subsequent to the Court's ruling on defendants' motion to dismiss, the only remaining claims are for breach

---

[1] As plaintiffs explain in their complaint, "[t]he WellPoint corporate group was the product of WellPoint Health Network Inc. formed from the for-profit conversion of Blue Cross of California." Doc. 1-1, p. 26. "WellPoint Inc. was formed by the 2004 merger of WellPoint Health Network Inc. and Anthem Inc." *Id*. WellPoint Health Network, Inc. was named as a defendant in the *Cima* complaint. However, in the instant complaint, the plaintiffs name WellPoint, Inc. as a defendant rather than WellPoint Health Network, Inc.

of contract and unfair practices under the Illinois Consumer Fraud Act. The Court now takes up plaintiffs' motion for class certification.

### II.     Analysis

In *Cima v. WellPoint Health Networks, Inc.*, 250 F.R.D. 374 (S.D. Ill. 2008), this Court denied class certification. The *Phillips* plaintiffs, however, claim they have addressed the issues that troubled the Court in *Cima*, and that class certification is now appropriate. The Court has carefully considered the briefing by the parties on the matter of class certification and rules as follows.

### a.     *Phillips* Plaintiffs are Not Precluded by the *Cima* Denial of Class Certification

Defendants first argue this Court need not consider class certification because this Court's denial of the *Cima* motion for class certification precludes certification of the *Phillips* proposed class, which is composed of *Cima* proposed class members. Defendants rely on *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 333 F.3d 763, 767 (7th Cir. 2003), in which the Seventh Circuit found class action certification inappropriate on issue preclusion grounds where proposed members of the first class sought class certification in a subsequent duplicitous class action. *Id*. Since defendants submitted this argument, the Supreme Court abrogated *Bridgestone/Firestone* holding that members of a putative class are not parties for the purposes of issue preclusion. *Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2379-80 (2011). Thus, the *Phillips* plaintiffs cannot be precluded from seeking class certification because this Court denied class certification in *Cima*. Defendants acknowledge this holding in their supplemental brief (Doc. 87). Defendants contend, however, that certification should still be denied for the same reasons it was denied in *Cima*. Accordingly, this Court will now turn to analyze whether the *Phillips* plaintiffs have shown the class certification requirements are satisfied.

### b. Plaintiffs Fail to Carry Burden with Respect to Rule 23(a)

The requirements for class certification are set forth in Federal Rule of Civil Procedure 23. The plaintiffs must demonstrate satisfaction of all of the Rule 23(a) requirements: numerosity, commonality, typicality, and adequacy of representation; and at least one of the Rule 23(b) requirements. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997); *Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 760 (7th Cir. 2000). "In addition, the class must be sufficiently definite that its members are ascertainable." *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 493 (7th Cir. 2012). A plaintiff "must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Rule 23 is subject to liberal interpretation, and policy favors the maintenance of class actions. *King v. Kansas City S. Indus., Inc.*, 519 F.2d 20 (7th Cir. 1975). District courts, however, have "broad discretion to determine whether certification of a class-action lawsuit is appropriate." *Chavez v. Ill. State Police*, 251 F.3d 612, 629 (7th Cir. 2001).

### i. Ascertainable Class

As previously stated, Rule 23 implicitly requires that a class be ascertainable. *Jamie S.*, 668 F.3d at 493. The plaintiff must "show that the class is indeed identifiable as a class." *Oshana v. Coca-Cola Co,* 472 F.3d 506, 513 (7th Cir. 2006) (citing *Simer v. Rios*, 661 F.2d 655, 669 (7th Cir. 1981) ("It is axiomatic that for a class action to be certified a 'class' must exist.")). The class must be "susceptible to precise definition," and "the class definition must be sufficiently definite so that it is administratively feasible for the Court to determine whether a particular individual is a member of the proposed class." *Cima v. WellPoint Health Networks, Inc.*, 250 F.R.D. 374, 377 (S.D. Ill. 2008) (quoting *Clay v. Am. Tobacco Co.*, 188 F.R.D. 483,

4

490 (S.D. Ill. 1999)). "For a class to be sufficiently defined, the identity of the class members must be ascertainable by reference to objective criteria." *Cima*, 250 F.R.D. at 378 (quoting *Clay*, 188 F.R.D. at 490). "[W]hether the description of a class is sufficiently definite to permit ascertainment of the class members must be determined on a case-by-case basis." *Cima*, 250 F.R.D. at 278 (quoting *Clay*, 188 F.R.D. at 490).

> In their motion for class certification, plaintiffs define the proposed class as
>
> all Illinois persons who were RightChoice individual or group health insurance policyholders at the time of the notice of the conversion scheme, who were rerated, repriced, underwritten with new exclusions, or were converted to the Unicare 1000 policy. Excluding those who have settled claims with WellPoint.

Doc. 68, p. 7. In *Cima*, this Court found this same class was ascertainable, stating

> [t]he proposed class consists essentially of persons who were RightCHOICE policyholders at the time notice was given of the alleged conversion scheme. Accordingly, the members of the class are identifiable by reference to objective criteria so that the requirement of an ascertainable class is satisfied.

*Cima*, 250 F.R.D. at 378. For the same reasons this Court explained in *Cima*, the Court finds the class in the instant action ascertainable. Accordingly, the Court will now consider whether plaintiffs have carried their burden in establishing the explicit Rule 23 factors.

    **ii.    Numerosity**

Under Rule 23(a), plaintiffs must show that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "A class of more than 40 individuals raises a presumption that joinder is impracticable." *Carrier v. JPB Enters., Inc.*, 206 F.R.D. 332, 334 (D. Me. 2002); *see also Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) ("[W]hile there is no fixed numerosity rule, . . . generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors.")

5

Plaintiffs, here, assert that "the policyholder class consists of 689 groups, plus 8,864 individual policy subscribers." (Doc. 68, p. 8). This Court found that numerosity was satisfied where the same proposed class was at issue in *Cima*. *Cima*, 250 F.R.D. at 378. The Court reasserts here that the issue of numerosity is clearly met. *See Hochschuler v. G.D. Searle & Co.*, 82 F.R.D. 339, 343 (N.D. Ill. 1978) (noting that a class exceeding one thousand members is plainly sufficient to satisfy numerosity).

### iii.     Commonality

Plaintiffs must also establish that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). "To satisfy the commonality element, it is enough for plaintiffs to present just one common claim." *Ross v. RBS Citizens, N.A.*, 667 F.3d 900, 908 (7th Cir. 2012) (citing *Wal-Mart Stores, Inc.*, 131 S. Ct. at 2552). However, "[t]his does not mean merely that they have all suffered a violation of the same provision of law." *Wal-Mart Stores, Inc.*, 131 S. Ct. at 2551. "What matters to class certification . . . is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id*. "The class 'claims must depend upon a common contention,' and '[t]hat common contention, moreover, must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481 (7th Cir. 2012) (citing *Wal-Mart Stores, Inc.*, 131 S. Ct. at 2551).

Plaintiffs assert the following factual and legal questions are common to all class members:

1. Whether WellPoint's purported "market withdrawal" forced conversion violated the statutory Illinois HIPAA provisions, standing alone or as part of the breach of contract claim, and as a violation of Illinois Consumer Fraud Act;
2. Whether the forced conversion scheme was a bona fide or legal "market withdrawal";
3. Whether the scheme actually constituted a "product discontinuation" under which insureds were entitled to select among policies without considering their health circumstances; and
4. Whether WellPoint's forced conversion otherwise violated a legal obligation to renew without consideration for changed health circumstances.

Doc. 68, p. 9. The Court notes that plaintiffs' Illinois HIPAA claims did not survive defendants' motion to dismiss. Thus, questions 1, as it relates to the Illinois HIPAA claim, 2, 3, and 4 are irrelevant to the Court's commonality inquiry. Defendants argue that commonality is not met because

> whether Plaintiffs suffered the same or even *any* injury depends on the unique facts and circumstances of each putative class member's health, medical history, financial condition, the option they chose following the withdrawal by [RightCHOICE Insurance Company], and other variables related to each class member's claimed injury.

Doc. 87, p. 23. Defendants rely heavily on *Wal-Mart Stores, Inc.*, decided after this Court found commonality was satisfied in *Cima*.

In *Wal-Mart Stores, Inc.*, plaintiffs alleged that discretionary acts by numerous store managers across the country resulted in discrimination. *Wal-Mart Stores, Inc.*, 131 S. Ct. at 2548. The Court found commonality was not satisfied because plaintiffs could not show that they suffered the same injury, and there was no common practice uniting "literally millions of employment decisions." *Id*. at 2551-52. Similarly, in *Jamie S.*, the Seventh Circuit found commonality was not satisfied in an Individuals with Disabilities Education Act case because the

7

central question "must be answered separately for each child based on individualized questions of fact and law, and the answers are unique to each child's particular situation." *Jamie S.*, 668 F.3d at 498.

In *Ross v. RBS Citizens, N.A.*, 667 F.3d 900, 908-09 (7th Cir. 2012), another post-*Wal-Mart Stores, Inc.* case taking up the issue of commonality, the court found commonality existed where defendants allegedly denied plaintiffs overtime pay in violation of the Fair Labor Standards Act and the Illinois Minimum Wage Law. The Court distinguished *Wal-Mart Stores, Inc.*, pointing out that *Wal-Mart Stores, Inc.* required the individual determination of discriminatory intent for 1.5 million nationwide claimants, while *Ross* plaintiffs "maintain[ed] a common claim that [defendant] broadly enforced an unlawful policy denying employees earned-overtime compensation." *Id*. at 909. "[That] unofficial policy [was] the common answer that potentially [drove] the resolution of [that] litigation." *Id*.

Here, with respect to plaintiffs' Illinois Consumer Fraud Act claim, like *Ross*, there is a common answer that will drive the resolution of this litigation. First, whether "[d]efendants' policy to shed undesirable health risks by re-rating and re-pricing health insurance polic[i]es by automatically converting polic[i]es, demanding reapplication, not renewing polic[i]es, or discontinuing policies" constituted an unfair practice in violation of the Illinois Consumer Fraud Act constitutes a question common to all plaintiffs. This sweeping inquiry is unlike *Wal-Mart Stores, Inc.*, where the court would have had to inquire into each plaintiff's allegation of discrimination to determine if the requisite discriminatory intent was present.

The Court, however, is not convinced that commonality exists with respect to plaintiffs' breach of contract claim. As this Court noted in *Cima*, numerous policies are at issue, some with individuals and some with groups, "each containing, no doubt, differing coverages, policy terms,

8

and so forth." *Cima v. WellPoint Health Networks, Inc.*, 250 F.R.D. 374, 382 (S.D. Ill. 2008). Accordingly, the Court would have to inquire into multiple different insurance policies and make an inquiry into whether each insured actually suffered damages as a result of defendants' breach. Like *Jamie S.*, the Court would have to address the breach of contract claim separately for each policy, based on individualized questions of fact and law unique to each insured. Unlike *Ross*, there would not be an answer to a common question that would drive the resolution with regard to the breach of contract claim. Accordingly, plaintiffs have not met their burden in establishing commonality with respect to their breach of contract claim.

    **iv.**       **Typicality**

Next, plaintiffs must establish that "the claims or defenses of the representative parties are typical of the claims or defenses of the class . . . ." Fed. R. Civ. P. 23(a)(3). "[A] 'plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.'" *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (quoting *De La Fuente v. Stokley-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)).

> The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the plaintiff's claim and the class claims are so interrelated that the interest of the class members will be fairly and adequately protected in their absence.

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157-58 n.13 (1982).

In this case, each potential class members' claims arise from the same events involving the withdrawal of RightCHOICE from the Illinois market and the conversion of insureds to Unicare plans. The individual policy holders' claims are also based on the same legal theories, including the remaining counts of breach of contract and unfair practices under the Illinois

Consumer Fraud Act. Defendants assert, however, that typicality is not present because "[t]he named plaintiffs assert CFA, breach of contract and state HIPAA claims, which the group class members cannot assert, and are not typical of the ERISA claims of the group class members." Doc. 87, p. 25.

The Court notes that it does not have enough information to determine whether the breach of contract claims asserted by the plaintiffs would be typical of breach of contract claims asserted by insureds under different policies. Further, the named individual policy holders' claims would not be typical of the group policy holders' ERISA claims. Accordingly, the Court is not convinced that the named plaintiffs' claims are typical of the proposed class members claims. However, in light of the Court's holding concerning Rule 23(b), the Court need not definitively determine whether typicality is satisfied.

    v.    **Adequacy of Representation**

The final Rule 23(a) factor requires that plaintiffs demonstrate that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "A class is not fairly and adequately represented if class members have antagonistic or conflicting claims." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). "Absent any conflict between the interests of the representative and [other class members], and absent any indication that the representative will not aggressively conduct the litigation, fair and adequate protection of the class may be assumed." *In re Gen. Motors Corp. Dex-Cool Prods. Liab. Litig.*, 241 F.R.D. 305, 313 (S.D. Ill. 2007).

Here, plaintiffs assert that the named class members have no conflict with prospective class members. Defendants assert the same argument that the Court rejected in *Cima* in its typicality analysis. Defendants do not suggest a conflict is present. Accordingly, the Court finds that the Rule 23(a)(4) requirement is satisfied.

In sum, the Court is not convinced that plaintiffs have carried their burden in showing that all of the Rule 23(a) factors are satisfied. Specifically, in light of the Supreme Court's clarification of Rule 23(a) in *Wal-Mart Stores, Inc.*, this Court is unable to conclude that the commonality and typicality requirements are satisfied. However, because the Court finds below that plaintiffs have failed to show that any one of the 23(b) factors are satisfied, the Court need not determine whether all of the Rule 23(a) factors are satisfied.

  **c. Plaintiffs Fail to Carry Their Burden with Respect to Rule 23(b)**

In addition to satisfying all of the Rule 23(a) requirements, a class action may only be maintained if one of three requirements set forth in Rule 23(b) is met. Fed. R. Civ. P. 23(b). Plaintiffs assert that they satisfy both Rule 23(b)(2) and (b)(3).

  **i. Federal Rule of Civil Procedure 23(b)(2)**

Rule 23(b)(2) provides that a class action may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). As this Court pointed out to the *Cima* plaintiffs, the commentary to Rule 23 explains that Rule 23(b)(2)

> is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate. . . . The subdivision does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages.

11

Fed. R. Civ. P. 23 advisory committee's note; *see also Zanni v. Lippold*, 119 F.R.D. 32, 35 (C.D. Ill. 1988). Where money damages are a component of the relief sought, Rule 23(b)(2) may be satisfied only where the money damages are incidental. *In re Allstate Ins. Co.*, 400 F.3d 505, 507 (7th Cir. 2005). For Rule 23(b)(2) purposes, damages are 'incidental" when they can be determined "'without the need for individual computation' so that a separate damages suit by individual class members would be a waste of resources." *Id*. (quoting *Manual for Complex Litigation (Fourth)* § 21.221(2004)); *see also Berger v. Xerox Corp. Ret. Income Guar. Plan*, 338 F.3d 755, 763-64 (7th Cir. 2003).

In *Cima*, this Court found class certification under Rule 23(b)(2) inappropriate because

> [t]his case is not one in which damages will flow mechanically to class members without the necessity of individualized calculations, nor is the monetary relief sought merely incidental to a request to equitable relief; in fact, money damages are the primary relief sought by the plaintiffs and the members of the proposed class. Accordingly, the members of the proposed class must be afforded the constitutional protections of notice and right to opt out . . . .

*Cima v. WellPoint Health Networks, Inc.*, 250 F.R.D. 374, 381 (S.D. Ill. 2008). Plaintiffs, here, have not presented any arguments to persuade the Court that its analysis should be any different in the *Phillips* plaintiffs' case. Accordingly, the Court adopts the reasoning in its *Cima* order and finds certification of the class under Rule 23(b)(2) inappropriate.

      **ii.    Federal Rule of Civil Procedure 23(b)(3)**

Rule 23(b)(3) provides that a class action may be maintained if

> The court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or

>undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). "This rule requires two findings: predominance of common questions over individual ones and superiority of the class action mechanism." *Murry v. America's Mortg. Banc, Inc.*, 03-C-5811, 03-C-6186, 2005 WL 1323364, at *9 (N.D. Ill. May 5, 2005). "[T]he need for individual damages determinations does not, in and of itself, require denial of [a] motion for [class] certification." *Arreola v. Godinez*, 546 F.3d 788, 801 (7th Cir. 2008).

In *Cima*, this Court found that plaintiffs failed to satisfy the Rule 23(b)(3) requirements for several reasons. First, the Court noted that "this case involves thousands of separate insurance policies issued over a period of ten years, each containing, no doubt, differing coverages, policy terms, and so forth." *Cima*, 250 F.R.D. at 382. The Court concluded that the multiple policies would require individualized inquiries, thus defeating "the manageability component of superiority under Rule 23(b)(3)." *Id*. Second, the Court pointed out that many of the group insurance plans were governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). *Id*. at 383. Noting that ERISA preempts state-law claims, *see Egelhoff v. Breiner*, 532 U.S. 141, 146 (2001), and thus finding the claims in *Cima* were likely "honeycombed with issues of ERISA preemption, the Court [found] that predominance and manageability [were] not satisfied." *Cima*, 250 F.R.D.at 384.

Finally, the *Cima* Court concluded that a class action was not the "superior means of resolving the claims of the proposed class." *Id*. at 384. Specifically, the *Cima* plaintiffs and proposed class members each were alleged to have suffered damages equal to "tens of thousands of dollars." *Id*. The Court cited *Amchem Prods., Inc. v. Windsor*, for the proposition that

>[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this

> problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

521 U.S. 591, 617 (1997). This Court concluded that "in a case involving, as here, substantial individual claims worth tens of thousands of dollars or more, class members obviously have an important interest in bringing individual actions." *Cima*, 250 F.R.D. at 384 (citing *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 678 (7th Cir. 2001) (Holding that "it is unnecessary to certify a nationwide class. Each [class member] has a substantial claim, of the sort that could be, and often is, pursued independently.")).

Here, the *Phillips* plaintiffs believe they have overcome the Court's concerns in its denial of the *Cima* motion for class certification. Plaintiffs allege that

> [t]he *Cima* denial rested on the court's belief that it was implausible that the damages calculation would not involve evaluation of thousands of policies and individual health conditions, such that individual rather than class issues would predominate, and that the case would be unmanageable.

Doc. 68, p. 13. Plaintiffs then present three methods by which to identify damages, "without resort to individualized health status or polic[i]es." *Id*.

Plaintiffs, however, understate this Court's reasoning for denying class certification in *Cima*. The *Cima* denial did not solely rest on the concern of evaluating damages. As stated above, the Court also noted the ERISA preemption concerns and the fact that individual class members, who allegedly had claims worth tens of thousands of dollars, had strong interests in bringing individual claims. Accordingly, even if plaintiffs' new damages approach would ease the Court's concerns over an individualized inquiry into damages, the other reasons for denying class certification are not addressed by plaintiffs. Accordingly, for those reasons laid forth in *Cima*, the Court finds that Rule 23(b)(3) is not satisfied.

### III. Conclusion

Because plaintiffs fail to carry their burden in establishing that any one of the three factors set forth in Federal Rule of Civil Procedure 23(b) is satisfied, the Court **DENIES** plaintiffs' motion for class certification.  (Doc. 68).  The Court further **DENIES** defendants' motion to strike plaintiffs' new expert reports submitted with plaintiffs' reply in support of class certification (Doc. 119) as moot.

**IT IS SO ORDERED.**

DATED:  October 15, 2012

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**