IN UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CHARLOTTE PHILLIPS *and* BOB
MYRICK*, individually and on behalf of all
others similarly situated*,

　　　　　Plaintiffs,

　　　v.

WELLPOINT INC., UNICARE NATIONAL
SERVICES, INC., UNICARE ILLINOIS
SERVICES, INC., UNICARE HEALTH
INSURANCE COMPANY OF THE
MIDWEST, RIGHTCHOICE MANAGED
CARE, INC., and RIGHTCHOICE
INSURANCE COMPANY,

　　　　　Defendants.

Case No. 3:10-cv-00357-JPG-SCW

## MEMORANDUM AND ORDER

　　　　This matter comes before the Court on defendants' bill of costs (Doc. 245). Plaintiffs

filed an objection (Doc. 260) to defendants' bill of costs to which defendants responded (Doc.

261). For the following reasons, the Court reduces defendants' bill of costs in the amount of

$56,931.83.

　　　　Defendants filed their bill of costs seeking to recover costs for exemplification and the costs

of making copies, transcripts, and witnesses for a total amount of $96,001.97. In response, plaintiffs

ask this court to deny costs to defendants on the basis of defendants' misconduct and plaintiffs'

indigency. In the alternative, plaintiffs ask this Court to (1) hold its ruling on plaintiffs' objection to

defendants' bill of costs in abeyance until after the plaintiffs' appeal; or (2) reduce the fees awarded

to a nominal amount.

Federal Rule of Civil Procedure 54(d)(1) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party."  Ordinarily the Clerk of Court taxes costs in favor of the prevailing party on 14 days' notice.  Fed. R. Civ. P. 54(d)(1).  Those costs may include:

> (1) Fees of the clerk and marshal; (2) Fees for printed and electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.  The Court presumes that a prevailing party is entitled to costs as a matter of course, but has the discretion to deny or reduce costs where warranted.  *Krocka v. City of Chicago*, 203 F.3d 507, 518 (7th Cir. 2000); *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987).  This presumption in favor of awarding costs is difficult for the non-prevailing party to overcome.  *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 945 (7th Cir. 1997); *see also Congregation of the Passion, Holy Cross Province v. Touche, Ross & Co.*, 854 F.2d 219, 222 (7th Cir. 1988) ("unless and until the losing party affirmatively shows that the prevailing party is not entitled to costs, the district court must award them, 'as of course'").

### 1.  Denial of Costs on the Basis of Misconduct or Indigency

First, the Court will consider whether it should completely deny costs to defendants.  The Seventh Circuit has recognized two situations that warrant the denial of costs: "the first involves misconduct of the party seeking costs, and the second involves a pragmatic exercise of discretion to deny or reduce a costs order if the losing party is indigent."  *Mother and Father v. Cassidy*, 338 F.3d 704, 708 (7th Cir. 2003).

To justify denying a bill of costs on the grounds of misconduct, the prevailing party must engage in misconduct "worthy of a penalty."  *Congregation of the Passion, Holy Cross Province*,

854 F.2d at 222.  The Seventh Circuit has suggested that misconduct worthy of a penalty may include calling unnecessary witnesses, raising unnecessary issues, or otherwise unnecessarily prolonging the proceedings.  *Id.*

For example, in *Overbeek*, the Seventh Circuit found the prevailing party's conduct did rise to the level of misconduct worthy of a penalty where counsel:

> inexplicably refused over a dozen offers of the policy limit, needlessly pursued a trial, appealed the jury's decision not to award punitive damages even though the defendants were judgment-proof, vanished for large periods of time, frivolously argued for dual coverage, and even wasted time and resources hailing [the losing party] into [a state] court for no apparent reason.

*Overbeek v. Heimbecker*, 101 F.3d 1225, 1228 (7th Cir. 1996).  However, in *Fairley*, the Northern District of Illinois found that the prevailing party's conduct did not rise to misconduct worthy of a penalty where the court "presided over 146 contested motions – mostly concerning discovery disputes – the vast majority of which were resolved in Plaintiffs' favor," found that defense counsel engaged in repeated obstreperous pretrial conduct," and sanctioned defendants "for failure to comply with [that] Court's discovery orders on multiple occasions."  *Fairley v. Andrews*, No. 03-C-5207, 2008 WL 961592, at *2 (N.D. Ill. Apr. 8, 2008).

Here, plaintiffs complain that defendants drove up their costs in this litigation by initially producing discovery in a format impossible to use.  Specifically, plaintiffs state defendants produced tens of thousands of documents in separate [TIFF][1] files.  Plaintiffs describe these documents as "a hundred thousand separate pictures of single pages, each by a non-informative serial number, requiring the user to individually open each page as an individual file, with no indication of topic, no way to locate documents, no way to know where any stopped or started, or in what order."  Doc. 260, p. 10.  As a result, plaintiffs had to hire, at great expense, electronically stored information ("ESI") consultants to manipulate this data.

---

[1] "TIFF" stands for "Tagged Image File Format," a file format that is easily searchable for specific terms.  *See Race Tires America, Inc.*, 674 F.3d at 161.

The conduct described in *Overbeek*, finding denial of costs was warranted, and *Fairley*, finding denial of costs was not warranted, is far more egregious than producing single page files requiring plaintiffs to hire an ESI consultant.  Further, plaintiffs have not suggested it is out of the ordinary that a litigant would hire an ESI consultant in a case involving the production of numerous electronic documents.  Thus, the Court finds that the conduct plaintiffs describe does not rise to the level of misconduct worthy of a penalty.  Now, the Court will consider whether defendants' bill of costs should be denied based on plaintiffs' indigency.

To deny a bill of costs on the grounds of indigency, "the district court must make a threshold factual finding that the losing party is 'incapable of paying the court-imposed costs at this time or in the future.'"  *Rivera v. City of Chi.*, 469 F.3d 631, 635 (7th Cir. 2006) (quoting *McGill v. Faulkner*, 18 F.3d 456, 459 (7th Cir. 1994)).  The losing party carries the burden of providing the court with "sufficient documentation to support such a finding."  *Rivera*, 469 F.3d at 635 (internal quotations omitted).  "This documentation should include evidence in the form of an affidavit or other documentary evidence of both income and assets, as well as a schedule of expenses."  *Id.*  Here, plaintiffs have failed to provide affidavits or other documentary evidence from which this Court could make a finding of indigency.  Because plaintiffs have failed to establish either misconduct by the prevailing party or indigency of the losing party, they have failed to overcome the strong presumption that defendants will recover costs.  Accordingly, the Court will now consider defendants' bill of costs by category of costs requested.

## 2.  Defendants' Bill of Costs by Category

Defendants have requested the Court tax costs for exemplification and the costs of making copies, transcripts, and witnesses.  First, the Court must determine whether the cost is authorized by statute.  *Northbrook Excess & Surplus Ins. Co. v. Proctor & Gamble Co.*, 924 F.2d

633, 642 (7th Cir. 1991).  Then, the Court must determine whether the cost is necessary and reasonable.  *Id*.

### a.  Exemplification and the Costs of Making Copies

Defendants' bill of costs includes costs for making copies in the amount of $83,642.83. This amount includes $38,378.03 for services from IKON Office Solutions "for the process of scanning hard copy documents so that they could be produced in electronic format in accordance with Plaintiffs' production requirements," and $45,264.80 for services from CaseCentral, Inc. ("CaseCentral") (subsequently acquired by Cloud Services of Guidance Software, Inc.) "for the preparation of native electronic files and documents for production in electronic format."  Doc. 245-1, pp. 2-4.

The Court may tax costs for the "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case."  28 U.S.C. § 1920(4). With respect to photocopying expenses, a party "is not required to submit a bill of costs containing a description so detailed as to make it impossible economically to recover photocopying costs." *Northbrook Excess & Surplus Ins. Co. v. Proctor & Gamble, Co.*, 924 F.2d 633, 643 (7th Cir. 1991). Rather, the party is only "required to provide the best breakdown obtainable from retained records." *Id*.

It is not clear, however, what "making copies" entails in the context of ESI.  *See Country Vintner of North Carolina, LLC v. E. & J. Gallo Winery, Inc.*, Case No. 12-2074, 2013 WL 1789728, at *7 (4th Cir. April 29, 2013).  In determining what is encompassed with the statutory definition of "making copies," the Court must be mindful that the Supreme Court has narrowly interpreted 28 U.S.C. § 1920 and taxable costs are "modest in scope" and "limited to relatively minor, incidental expenses."  *Id*. (quoting *Taniguchi v. Kan P. Saipan, Ltd*., 132 S. Ct. 1997, 1999-2000 (2012)).  The Supreme Court has also "emphasized that 'costs almost always amount to less than the successful

litigant's total expenses.'" *Country Vintner of North Carolina, LLC*, 2013 WL 1789728, at *7 (quoting *Taniguchi*, 132 S. Ct. at 2006). Finally, there is a presumption "that the responding party must bear the expense of complying with discovery requests." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978).

The Seventh Circuit has found that "costs for converting computer data into a readable format in response to plaintiff's discovery requests" are recoverable. *Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009). The Seventh Circuit has not yet provided guidance as to which services related to the production of ESI are taxable under the statute. *See Johnson v. Allstate Ins. Co.*, Case No. 07-cv-781-SCW, 2012 WL 4936598, at *4 (S.D. Ill. Oct. 16, 2012). However, persuasive opinions from other circuits and another court within the Southern District of Illinois have found that not all expenses associated with the production of ESI are recoverable by the prevailing party. *See Race Tires America, Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 171 (3d Cir. 2012); *Country Vintner of North Carolina, LLC*, 2013 WL 1789728, at *7; *Johnson*, 2012 WL 4936598, at *4-5.

In *Race Tires America, Inc.*, the prevailing party sought to recover costs for the following items: collecting and preserving ESI; processing and indexing ESI; keyword searching of ESI for responsive and privileged documents, converting native files to TIFF; and scanning paper documents to create electronic images. *Race Tires America, Inc.*, 674 F.3d at 166. The Third Circuit found that only the scanning of hard copy documents and the conversion of native files to TIFF were costs recoverable within the statutory meaning of "making copies." *Id*. at 167. That court acknowledged that "extensive 'processing' may be "essential to make a comprehensive and intelligible production" of ESI. *Id*. at 169. Nevertheless, the court reasoned not all of the costs of producing ESI were recoverable by comparing the ESI production process to the recovery of costs in the pre-digital era, as follows:

The process employed in the pre-digital era to produce documents in complex litigation similarly involved a number of steps essential to the ultimate act of production. First, the paper files had to be located. The files then had to be collected, or a document reviewer had to travel to where the files were located. The documents, or duplicates of the documents, were then reviewed to determine those that may have been relevant. The files designated as potentially relevant had to be screened for privileged or otherwise protected material. Ultimately, a large volume of documents would have been processed to produce a smaller set of relevant documents. None of the steps that preceded the actual act of making copies in the pre-digital era would have been considered taxable. And that is because Congress did not authorize taxation of charges necessarily incurred to discharge discovery obligations. It allowed only for the taxation of the costs of making copies.

*Id.* at 169; *accord Country Vintner of North Carolina, LLC*, 2013 WL 1789728, at *7.

The Court finds the Third Circuit's reasoning persuasive. As such, defendants here may only recover the actual costs of scanning the hard document copies and converting native files to a readable format. The Court will now consider whether the specific services performed by IKON Office Solutions and CaseCentral for which defendants seek to recover are within the statutory meaning of "making copies."

### i.   IKON Office Solutions

First, the Court will consider the services from IKON Office Solutions in the amount of $38,378.03. This process included $22,561.00 for imaging of hard copy files, $14,059.53 for logical document determination (organizing documents to avoid single page production), and $1,757.50 for project management and technical service necessary to "format and convert the scanned documents into the load files necessary to upload the files to Defendants' ESI vendor." Doc. 245-3, pp. 3-4.

Plaintiffs argue the exemplification costs should be denied or greatly reduced. Specifically, plaintiffs argue defendants' bill of costs is not sufficiently specific. They further argue as follows: (1) it is impossible to determine whether the charges of $58.30, $804.10, $21,130 and $568.50 labeled "imaging" were actually for making copies; (2) "grouping" is not a recoverable cost; and (3) the management and technical fee of $1,757.50 is not recoverable.

7

Of the costs requested for services performed by IKON Office Solutions, only $22,561.00 for the imaging of hard copy files, for the reasons stated in *Race Tires America, Inc.*, is recoverable under the statute as "making copies."  Considering the numerous documents produced in this case, the Court has no reason to believe that this cost was either unreasonable or unnecessary.

 "Logical document determination" is similar to steps taken prior to the ultimate act of production of hard copies in the pre-digital era, such as logically organizing documents before copying.  This is also similar to "processing and indexing ESI" which the *Race Tires America, Inc.*, court found was not included within the statutory definition of "making copies."  As such, the Court finds that "logical document determination" is not within the statutory meaning of "making copies" and reduces defendants' bill of costs to that extent.

Similarly, "project management and technical services" is not encompassed within the statutory meaning of copying.  The act of formatting and converting the scanned documents is the means by which this data is conveyed to the plaintiffs and such acts would not be recoverable under the statute for similar acts in the pre-digital era.  As such, the Court reduces defendants' bill of costs to the extent it seeks to recover fees for "project management and technical services."  In sum, the Court will tax costs in the amount of $22,561.00 for services performed by IKON Office Solutions which accounts for a reduction in the bill of costs in the amount $15,817.03.

### ii. CaseCentral

Next, the Court will consider the services from CaseCentral in the amount of $45,264.80 for "production fees."  According to the affidavit of CaseCentral's director, production fees included $10,729.57 for ingestion services, $6,552.73 for processing to production format

services, and $27,982.50 for professional services relating to the former two categories.  The
Court will consider each category in turn.

Ingestion services include the "extraction of metadata fields," "the extraction of
document text," "the process of rehabilitating any documents in which the metadata fields and
document text were damaged and unable to be initially extracted," and "the loading of hard copy
materials into the CaseCentral database so that they can be produced in electronic format."  Doc.
245-4, p. 4.  The extraction of metadata and document text is comparable to unrecoverable costs
in the production of hard copies such as screening for privileged or otherwise protected
materials.  As *Johnson* explained, costs for "the extraction of metadata" are not recoverable
based on *Race Tires America, Inc.*'s reasoning that "gathering, preserving, processing, searching,
culling and extracting ESI simply do not amount to 'making copies.'"  *Johnson*, 2012 WL
4936598, at *6 (quoting *Race Tires America, Inc.*, 674 F.3d at 170)).  For the same reasons, services
which included "the extraction of document text" and "the process of rehabilitating any documents in
which the metadata fields and document text were damaged and unable to be initially extracted" are
not recoverable.

As previously asserted, scanning hard copy files into a database for electronic production
is recoverable.  CaseCentral's invoices, however, do not clearly explain which ingestion services
were being performed.  Rather, the service descriptions include ambiguous entries under
"Description" such as "Data Services" and "Professional Services."  An attached spreadsheet
further breaks ingestion services into "dataloads," "processing," "rehabilitation," "professional
services," "data load rehabilitation," and "loading."  These descriptions are not entirely clear.
However, the Court can discern that "dataloads" and "loading" are recoverable because this
appears to be the process of "loading hard copy materials."  As previously explained, the
services of "rehabilitation" and "data load rehabilitation" are not recoverable.  The Court is

9

unable to discern what services were entailed in "processing" and "professional services." Without more information, this Court cannot determine whether these services are allowable under the statute or whether they were necessary and reasonable. As such, the Court awards "ingestion" costs only for "dataloads" and "loading" in the amount of $4,150.00 and reduces defendants' bill of costs by $6,579.57 to account for the remaining, unrecoverable ingestion costs.

Processing to production format services included "the conversion of documents into single page Group TIFF images," "applying the bates stamp to the TIFF images," "creating an image load file," and "creating a concordance-ready data load file." Doc. 245-4, p. 4. The Court finds that the conversion of documents into single page TIFF images is a recoverable cost for the same reasons the court allowed those costs in *Race Tires America, Inc*. However, applying a bates stamp number, creating an image load file, and creating a concordance-ready data load file are beyond the actual act of "making copies" as allowed by the statute. The Court, however, is unable to determine which of these activities were taken when the defendants refer to "processing to production format" in their attached invoices and spreadsheet (Doc. 245-5). The activity of "processing to production format" is broken down into "professional services" and "data update" with no indication of which of the above-listed services were performed. As such, the Court cannot discern whether the services billed for were allowed under the statute or whether they were necessary and reasonable. Accordingly, the Court reduces defendants' bill of costs for the amount of $6,552.73 for "processing to production format services" from CaseCentral.

Professional services included "the process of working with the end client in establishing the ingestion and production requirements and protocols and translating those requirements into

work orders for the data services team," "the process of conducting quality control to ensure that the requirements of the production protocols are met," and "any requisite corrections needed after the detection of quality issues."  Doc. 245-4, p. 4.  These services are clearly not within the statutory meaning of "making copies" as explained in *Race Tires America, Inc*.  As such, the Court reduces defendants' bill of costs to the extent it requests $27,982.50 for professional services from CaseCentral.  In sum, the Court will tax costs in the amount of $4,150.00 for services performed by CaseCentral, which accounts for a reduction in the bill of costs in the amount $41,114.80.

In conclusion, the Court finds it appropriate to tax costs in the amount of $26,711.00 for exemplification and the costs of making copies.  This amount includes: (1) $22,561.00 for services from IKON Office Solutions; (2) $4,150.00 for services from CaseCentral; and (3) a reduction of $56,931.83 for unrecoverable costs.

### b.  Witnesses

Defendants request fees for witnesses in the amount of $1,275.71 for the deposition of defendants' expert witness, Bruce Deal.  This amount includes a hotel room in the amount of $483.53 and travel in the amount of $792.18.  Plaintiffs complain that the "airline receipts do not identify the (sic) how they account for $792.18 for travel," but they do not object to the room charges.  The travel receipt included other unrelated flights; however, defendants' affidavit attests that the amount requested is only for the travel related to Deal's deposition (Doc. 245-2, p. 5).  Plaintiffs have not suggested otherwise.  Witness fees are clearly authorized under the statute.  Plaintiffs do not argue and the Court has no reason to believe these fees were unreasonable or unnecessary.  As such, the Court will tax costs in the amount of $1,275.71 for witness fees.

**c.  Transcripts**

Defendants also request costs in the amount of $11,083.43 for "court reporter and videographer fees and for deposition and court hearing transcripts necessarily obtained for use in this case." Doc. 245-2, p. 4.  Plaintiffs acknowledge that these costs "appear to be within the judicial conference maximum transcript rates," but "urge the court to order each side to pay their own costs as to transcripts" for equitable reasons.  The plaintiffs cite no authority for the relief they request and have failed to overcome the strong presumption that defendants are entitled to recover these costs.  These costs are authorized by statute.  Plaintiffs do not argue and the Court has no reason to believe these fees were unreasonable or unnecessary.  As such, the Court will tax costs in the amount of $11,083.43 for transcripts.

## CONCLUSION

For the foregoing reasons, the Court finds defendants may recover costs as follows: (1) $26,711.00 for exemplification and the costs of making copies; (2) $1,275.71 for witnesses; and (3) $11,083.43 for transcripts.  As such, the Court **REDUCES** defendants' bill of costs in the amount of $56,931.83 and **DIRECTS** the Clerk of Court to tax costs in the total amount of $39,070.14.


**IT IS SO ORDERED.**

**DATED:**  May 16, 2013

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
